**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED MAY 31, 2006

VIRGINIA JOLIET,

Plaintiff-Appellee,

v

No. 127175

GREGORY E. PITONIAK and FRANK BACHA,

Defendant-Appellants,

and

JAMES ARANGO,

Defendant.

_____

BEFORE THE ENTIRE BENCH

WEAVER, J.

The issue before us is whether plaintiff's claims for violations of the Civil Rights Act (CRA),[1] breach of contract, and misrepresentation accrue on the dates that the alleged discriminatory acts or misrepresentations occur or on the plaintiff's last day of work. Following our decision in *Magee v DaimlerChrysler*

---

[1] MCL 37.2101 *et seq.*

*Corp,* 472 Mich 108; 693 NW2d 166 (2005), we hold that a claim of discrimination accrues when the adverse *discriminatory acts* occur. Thus, if a plaintiff's complaint does not make out a claim of *discriminatory discharge*, a claim of constructive discharge for a separation from employment occurring after the alleged discriminatory acts cannot serve to extend the period of limitations for discriminatory acts committed before the termination. Because *Jacobson v Parda Fed Credit Union*, 457 Mich 318; 577 NW2d 881 (1998), held that allegations of constructive discharge could operate to extend the applicable period of limitations for discriminatory acts falling outside the period of limitations, and is inconsistent with *Magee, supra,* it is overruled.

Here, plaintiff does not assert a claim of discriminatory discharge. All the discriminatory acts or misrepresentations alleged in plaintiff's complaint took place before November 30, 1998. Therefore, plaintiff's November 30, 2001, complaint was not timely filed under the applicable three-year statute of limitations, MCL 600.5805.[2] Accordingly, we hold that the trial court and the Court of Appeals erred in denying defendants' motion for summary disposition. We reverse and remand to the Wayne Circuit Court for entry of an order of summary disposition in defendants' favor.

---

[2] The language formerly found in MCL 600.5805(9) is now set forth in MCL 600.5805(10).

FACTS

Plaintiff worked for the city of Taylor as a data processing manager. Plaintiff testified by deposition that beginning in 1997, she was subjected to continual sexist remarks and derogatory treatment because of her age by defendant Frank Bacha, the former executive director of the Department of Public Works in the city of Taylor.

On August 31, 1998, the city hired a much younger man, Randy Wittner, as the new director of information systems. Plaintiff testified that many of her prior job duties were shifted to Wittner, and that she suffered a $15,000 reduction in income because she no longer received overtime pay.[3]

In late September 1998, Bacha went on leave, and then formally left his position on October 8, 1998. Bacha was apparently the subject of sexual harassment complaints from other women, and it was arranged for him to leave his job with the city of Taylor. After Bacha went on leave, plaintiff never saw him again.

Plaintiff testified that she became uncertain about her status at work in the fall of 1998. She attempted to meet with defendant Gregory Pitoniak, mayor of the city of Taylor, about her concerns, but he avoided meeting with her. Plaintiff repeatedly requested an "at will termination" by the city, which would have

_____

[3] Plaintiff's January 17, 2003, affidavit.

allowed her to receive 30 weeks' severance pay, but she testified that Pitoniak refused to discuss her requests.

Plaintiff went on vacation on November 24, 1998. While on vacation she decided that she could no longer work for the city. Plaintiff sent in her resignation on November 30, 1998, to be effective December 1, 1998. In her letter of resignation, plaintiff again requested that she be given severance pay.

On November 30, 2001, plaintiff filed a complaint against Pitoniak and Bacha.[4] Plaintiff claimed quid pro quo sex discrimination, hostile work environment sex discrimination, age discrimination, breach of contract, and misrepresentation.

Defendants filed a motion for summary disposition under MCR 2.116(C)(7), asserting that plaintiff's suit was barred by the three-year period of limitations in MCL 600.5805(9). At the February 21, 2003, hearing on the motion for summary disposition, plaintiff conceded that all her claims, including her claims for breach of contract and misrepresentation, were governed by the three-year period of limitations in MCL 600.5805(9).

The trial court denied defendants' motion for summary disposition, concluding that plaintiff had three years from the last day that she worked, which

---

[4] Plaintiff's complaint also named James Arango as a defendant. Arango was an outside contractor who did work for the city of Taylor's Department of Public Works. Arango was apparently never served with the complaint and has not filed an appearance or responsive pleadings in this matter. The claim against Arango is not before the Court.

4

was sometime between November 30, 1998, and December 3, 1998, to file suit. The Court of Appeals affirmed the order denying defendants' motion for summary disposition, finding that plaintiff's last day of work was November 30, 1998.[5]

Defendants then filed an application for leave to appeal in this Court. We ordered oral argument on the application, instructing the parties to address the following questions:

> The parties shall submit supplemental briefs . . . addressing: (1) what actions, if any, were taken by the two defendants after October 8, 1998, that contributed to a discriminatory hostile work environment, so as to support a December 1, 1998, date of injury; (2) whether a December 1, 1998, accrual date for injury to plaintiff is sustainable for defendant Frank Bacha, where he left his employment with the city of Taylor on October 8, 1998; and (3) the impact, if any, of this Court's decision in *Magee v DaimlerChrysler Corp,* 472 Mich 108 (2005).[6]

## STANDARD OF REVIEW

This Court reviews de novo rulings on summary disposition motions, viewing the evidence in the light most favorable to the nonmoving party.[7] In the absence of disputed facts, whether a cause of action is barred by the applicable statute of limitations is a question of law, which this Court reviews de novo.[8]

---

[5] Unpublished opinion per curiam of the Court of Appeals, issued August 31, 2004 (Docket No. 247590).

[6] 472 Mich 908 (2005).

[7] *Neal v Wilkes,* 470 Mich 661, 664; 685 NW2d 648 (2004), and *DiFranco v Pickard,* 427 Mich 32, 38; 398 NW2d 896 (1986).

[8] *Moll v Abbott Laboratories,* 444 Mich 1, 26; 506 NW2d 816 (1993).

ANALYSIS

All of plaintiff's claims against the defendants are subject to the three-year period of limitations in MCL 600.5805(9).[9] The questions presented are on what dates did plaintiff's claims accrue, and when did the period of limitations begin to run.

The statute of limitations at issue, MCL 600.5805, provides that plaintiff's claims must be brought within three years of the date the claims accrued:

> (1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.
>
> * * *
>
> (9) The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property.

---

[9] Plaintiff does not have a contract with either of the defendants; her contract was with the city of Taylor, which is not a party in the suit. These alleged contract claims are discrimination claims recast as contract claims. At the February 21, 2003, hearing on the motion for summary disposition, plaintiff conceded that all her claims, including her claim for breach of contract and misrepresentation, were governed by the three-year statute of limitations in MCL 600.5805(9). *Stringer v Sparrow Hosp Bd of Trustees,* 62 Mich App 696, 702; 233 NW2d 698 (1975), and *Glowacki v Motor Wheel Corp,* 67 Mich App 448, 460; 241 NW2d 240 (1976). Given plaintiff's concession, for purposes of our analysis of when plaintiff's claims accrued under the applicable statute of limitations, how such contract claims are characterized is irrelevant.

Furthermore, accrual under the three-year statute of limitations is measured by "the time the wrong upon which the claim is based *was done* regardless of the time when damage results."[10]

Thus, plaintiff's claims are barred by the statute of limitations unless they were brought within three years of the date the claims accrued, which is the date of the alleged wrongdoing.

The trial court and the Court of Appeals both relied on *Jacobson, supra*, and *Collins v Comerica Bank,* 468 Mich 628; 664 NW2d 713 (2003), to hold that the period of limitations began to run on plaintiff's last day of work. Both courts found that plaintiff's last day of work was not before November 30, 1998, and thus plaintiff's suit was timely filed within the three-year period of limitations.

The lower courts' reliance on *Collins* was erroneous. First, as we noted in *Magee*, *supra, Collins* involved a claim of *discriminatory* discharge motivated by race and gender animus, not a constructive discharge based on earlier discriminatory acts, as is the claim here.[11] In *Collins,* after the plaintiff's employment was terminated by her employer, the plaintiff brought a claim of discriminatory discharge under the Civil Rights Act, MCL 37.2101 *et seq.* There,

---

[10] MCL 600.5827 (emphasis added).

[11] *Magee, supra* at 112.

this Court recognized that "a claim for discriminatory discharge cannot arise *until* a claimant has been discharged."[12]

But here plaintiff does not assert a claim of discriminatory discharge. Rather, plaintiff's Civil Rights Act claims and her breach of contract and misrepresentation claim are based on alleged discriminatory conduct that occurred before she resigned her position. Thus, unlike the situation in *Collins,* the adverse employment action alleged in this case did not coincide with the date of the termination of plaintiff's employment. *Collins* is inapposite.

This Court recently recognized in *Magee, supra,* the distinction between a constructive and a discriminatory discharge. When the plaintiff does not make a claim of discriminatory termination, the court must examine whether the discriminatory *conduct* occurred within the three years that preceded the filing of the complaint. In *Magee*, the plaintiff went on medical leave on September 12, 1998, and resigned on February 2, 1999. She never returned to work from her medical leave. On February 1, 2002, the plaintiff filed a civil rights claim against the defendant, alleging an assortment of age, sex, and hostile work environment claims. The trial court granted the defendant's motion for summary disposition on the ground that the statute of limitations barred the plaintiff's claims, because the plaintiff alleged no discriminatory activity after September 12, 1998. The Court of

---

[12] *Collins, supra* at 633 (emphasis added).

8

Appeals reversed the trial court by relying on *Collins*. It held that the plaintiff's suit was timely because she filed suit within three years of her resignation.

This Court reversed the Court of Appeals and distinguished *Collins* on the basis that the plaintiff in *Magee* did not allege a discriminatory discharge. Since she was not discriminatorily discharged by the defendant, and she could not allege any acts of discrimination within three years of her lawsuit, the plaintiff's claims were barred by the statute of limitations. We find the holding of *Magee* particularly instructive in this case, since both cases center on claims of constructive discharge where the alleged discriminatory acts preceded the date of resignation.

In addition to its misplaced reliance on *Collins*, the Court of Appeals in this case also relied on *Jacobson, supra*, to hold that plaintiff's claims accrued on her last day of work. In *Jacobson,* this Court considered whether the 90-day statute of limitations contained in the Whistleblowers' Protection Act (WPA)[13] barred the plaintiff's wrongful discharge claim.[14] The plaintiff, an executive vice president and chief operating officer of the defendant Parda Federal Credit Union, argued

---

[13] MCL 15.363(1) ("A person who alleges a violation of this act may bring a civil action for appropriate injunctive relief, or actual damages, or both within 90 days after the occurrence of the alleged violation of this act.").

[14] MCL 15.362 ("An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law . . . .").

that she had been constructively discharged, in violation of the WPA, after she notified the FBI that her employer may have filed a fraudulent bond claim with its insurer.[15] The plaintiff alleged that her relationship with the Parda board of directors thereafter deteriorated, that the board passed her over for a promotion to be chief executive officer, and that her job duties were significantly reduced. In response to what the plaintiff perceived to be an intolerable work environment, the plaintiff composed and mailed a resignation letter on Saturday, October 21, 1989, and cleaned out her desk on the following Monday. She later filed suit on January 19, 1990, exactly 90 days after writing and mailing the letter.

After the plaintiff received a favorable jury verdict, the trial court granted the defendant a directed verdict because the plaintiff failed to allege a violation of the WPA that occurred within the period of limitations. The Court of Appeals reversed, and this Court affirmed.

The majority held that the constructive discharge, although not itself a cause of action,[16] was a violation of the WPA as a retaliatory act of discharge, since "a discharge occurs when a reasonable person in the employee's place would feel compelled to resign."[17] Although the plaintiff's voluntarily resignation was

---

[15] *Jacobson, supra* at 321-322.

[16] *Id.* at 321 n 9, citing *Vagts v Perry Drug Stores, Inc,* 204 Mich App 481; 516 NW2d 102 (1994).

[17] *Jacobson, supra* at 328.

compelled by discriminatory acts that had occurred more than 90 days *before* filing her lawsuit, the majority found that her WPA claim was timely filed.

Justice Taylor, joined by Justices Weaver and Brickley, dissented. The dissent distinguished between a violation of the WPA and its lingering effects. According to the dissent, it is the adverse employment action that motivates an employee ultimately to resign that triggers the statute of limitations, not the date of the resignation.[18] As the WPA limitations period runs on the "'occurrence of the alleged *violation* of this act,'"[19] the dissent noted that the plaintiff's resignation was a *response* to an alleged WPA violation, not an alleged violation itself. The dissent criticized the majority for focusing intently on the date of resignation, particularly when the events in *Jacobson* that "cause[d] the employee to feel compelled to resign"[20] would have been time barred by the 90-day statute of limitations.

We note that, absent *Magee*, which the Court of Appeals in this case did not have the opportunity to consider, *Jacobson* would compel this Court to affirm the Court of Appeals, because plaintiff filed suit within three years of the date of her resignation. However, our decision in *Jacobson* is inconsistent with the statute of limitations accrual analysis we ultimately applied in *Magee*. Because *Jacobson's*

---

[18] *Id*. at 337 (Taylor, J., dissenting).

[19] *Id.*

[20] *Id.*

11

analysis is contrary to the one adopted in *Magee*, we are obligated to resolve this conflict and decide which decision best reflects the Legislative intent expressed in the words of the statute of limitations.

*Magee* is more faithful in construing the plain language of the statute of limitations under the CRA than *Jacobson* was in construing the WPA statute of limitations. *Magee* recognized that the basic question to answer when analyzing the accrual date of a claim under the CRA is when did the "injury" or "wrong" take place. This is the most straightforward reading of the statute of limitations, which speaks only in terms of the "injury" and "the time [of] the wrong." Here, pursuant to the text of MCL 600.5827, plaintiff's claims accrued at the time the wrongs on which her claims are based were committed, not when she suffered damage. Thus, the relevant date for the period of limitations is not plaintiff's last day of work, but the date of the last discriminatory incident or misrepresentation.

We agree with the *Jacobson* majority that a constructive discharge is not a cause of action, but simply the culmination of alleged wrongful actions that would cause a reasonable person to quit employment. Constructive discharge is a *defense* that a plaintiff interposes to preclude the defendant from claiming that the plaintiff voluntarily left employment. *Jacobson*, *supra* at 321 n 9. The resignation itself does not constitute a separate cause of action. *Id.*

However, notwithstanding the conclusion that a constructive discharge is not a cause of action, *Jacobson* erroneously treated an *employee's* resignation as a violation of the WPA. Where the resignation is not itself an unlawful act

12

perpetrated by the employer, it simply is not a "violation" of the WPA under the plain language of MCL 15.362, which prohibits discharge, threats, or other discrimination by the *employer*. We agree with the *Jacobson* dissent that in the context of a constructive discharge it is the *employer's* wrongful act that starts the period of limitations by causing the employee to feel compelled to resign, not the *employee's* response. Accordingly, we overrule the accrual analysis of *Jacobson* because it is inconsistent with our opinion in *Magee* and with the plain language of the statute of limitations under the WPA and the CRA.[21]

Having distinguished *Collins*, reaffirmed *Magee,* and overruled *Jacobson*,we next examine the discriminatory conduct and misrepresentations alleged against each individual defendant to see whether the alleged conduct occurred on or after November 30, 1998, within the three years preceding the filing of plaintiff's complaint.

---

[21] The dissent labels our overruling of *Jacobson* "gratuitous" and "unnecessary" because *Jacobson* involved claims brought under the WPA, not the CRA. *Post* at 2. However, the dissent's basis for distinguishing *Jacobson* evades the plain fact that the Court of Appeals relied on *Jacobson* to reach its decision in this case. Therefore, the soundness of *Jacobson's* accrual analysis, which conflicts with our recent decision in *Magee*, must be confronted and resolved by this Court. Given the choice, the dissent would prefer to overrule *Magee* and reaffirm *Jacobson*, but she posits no analytical reason why it would resolve the conflict in favor of the latter and why, under the plain language of the CRA's statute of limitations, the plaintiff's claim could accrue when the plaintiff felt compelled to resign rather than the date when the defendant employer actually injured the plaintiff through an adverse employment action. We believe that such a result is inconsistent with the language of the applicable statute of limitations.

13

A. Age and Sexual Discrimination

## 1. DEFENDANT FRANK BACHA

Plaintiff recorded incidents by Bacha that she believed were discriminatory in her daily planner.  The incidents that plaintiff recorded occurred between August 1997 and September 1998.  Plaintiff testified in her deposition that she never saw Bacha after he ceased working for the city in September 1998:

> *Q*. . . . Was there any type of harassment by Mr. Bacha that you're aware of after he went on leave in September of 1998?
>
> *A*. No, I never saw him again.[22]

Even viewing the evidence in the light most favorable to plaintiff, on the basis of plaintiff's deposition testimony it is clear that Bacha engaged in no discriminatory conduct within the limitations period.

The trial court and Court of Appeals erred in denying the motion for summary disposition with regard to Bacha.

## 2. DEFENDANT GREGORY PITONIAK

Although in her deposition plaintiff testified that there was no specific incident of discrimination by Pitoniak between November 24, 1998, and November 30, 1998,[23] plaintiff claims on appeal that two discriminatory acts by Pitoniak occurred within the three years that preceded the filing of the complaint.

---

[22] Deposition of Virginia Joliet, August 21, 2002, p 61.

[23] In her September 3, 2002, deposition, plaintiff testified as follows:

(continued…)

First, plaintiff claims that she received disparate pay until she resigned. Specifically, plaintiff alleges that her income was decreased by approximately $15,000 because she no longer received overtime pay after the city hired Wittner as the new director of information systems. Wittner was hired on August 31, 1998.

The hiring of the younger man was the alleged discriminatory act; the resulting loss of overtime pay was an ongoing damage that resulted from that discriminatory act, not a discriminatory act in itself. If an act is not in and of itself discriminatory, i.e., it has a discriminatory effect only because of a prior discriminatory act, it cannot sustain a cause of action. *Sumner v Goodyear Tire & Rubber Co,* 427 Mich 505, 530; 398 NW2d 368 (1986) (citing *United Air Lines,*

---

(…continued)

> *Q*. Was there any incident of discrimination that occurred between November 24th and the date you resigned on November 30th?
>
> *A*. I had no contact with City officials, but I maintained that their actions were cumulative.
>
> *Q*. Okay. I—
>
> *A*. But no specific—No.
>
> *Q*. There was no specific incident of discrimination from November 24th till November 30th; is that correct?
>
> *A*. Let me just make sure I didn't get—don't have a record of a phone call.
>
> There was no specific act of discrimination during that time period.

*Inc v Evans,* 431 US 553; 97 S Ct 1885; 52 L Ed 2d 571 [1977]), overruled on other grounds by *Garg v Macomb Co Community Mental Health Services,* 472 Mich 263; 696 NW2d 646 (2005).

Plaintiff's claim based on the hiring of Wittner accrued when the alleged discriminatory act took place, when Wittner was hired on August 31, 1998, even though the damages from that discriminatory act continued during the limitations period. MCL 600.5827.

Second, plaintiff made a request for severance pay in her resignation letter of November 30, 1998. Plaintiff alleges that this final request for severance pay, and Pitoniak's failure to respond to her request, was a discriminatory act that fell within the three-year period. But the failure to grant plaintiff's request for severance pay was not a discriminatory act. Plaintiff was not entitled to severance pay upon her resignation, though she would have been entitled to it had she been terminated by the city without cause.

Because plaintiff alleged no discriminatory acts by Pitoniak that occurred on or after November 30, 1998, her complaint against him was not timely filed.

### B. Breach of Contract and Misrepresentation

In count IV of her complaint, plaintiff alleged that defendants made various misrepresentations to her: that her working conditions "would not be affected by her acceptance of any sexual harassment or discrimination on the basis of her age or sex," that her job was not being advertised or open for a replacement, and that she was to perform her duties in the best interests of the city of Taylor. All these

allegations of misrepresentation stem from incidents that occurred before November 30, 1998. Because the claims did not accrue within the three years preceding the filing of the complaint, plaintiff's complaint was not timely filed.

CONCLUSION

Plaintiff's claims accrued on the dates that the alleged discriminatory acts or misrepresentations occurred. All the discriminatory acts or misrepresentations alleged in plaintiff's complaint took place before November 30, 1998. Thus, her November 30, 2001, complaint was not timely filed. The trial court and Court of Appeals erred in denying defendants' motion for summary disposition based on the three-year period of limitations, MCL 600.5805(9), by relying on *Collins, supra*.

We reverse the Court of Appeals judgment affirming the trial court's denial of defendants' motion for summary disposition, and remand to the Wayne Circuit Court for entry of an order granting defendants' motion for summary disposition.

Elizabeth A. Weaver
Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

17

STATE OF MICHIGAN

SUPREME COURT

VIRGINIA JOLIET,

        Plaintiff-Appellee,

v                                     No.  127175

GREGORY E. PITONIAK and
FRANK BACHA,

        Defendants-Appellants,

and

JAMES ARANGO,

        Defendant.

_____

KELLY, J. (*dissenting*).

I respectfully disagree with the majority in this case. While the Court of Appeals and the trial court did err in relying on *Collins v Comerica Bank*,[1] their reliance on *Jacobson v Parda Fed Credit Union*[2] was not misplaced. And, because I continue to believe that *Magee v DaimlerChrysler Corp*[3] was wrongly decided, I disagree with the majority's decision to overrule *Jacobson*.

---

[1] 468 Mich 628; 664 NW2d 713 (2003).

[2] 457 Mich 318; 577 NW2d 881 (1998).

[3] 472 Mich 108; 693 NW2d 166 (2005).

\

The *Collins* decision is inapposite to this case. The Court there held that a cause of action for discriminatory termination cannot arise until the employee is actually discharged. Virginia Joliet does not assert a claim of discriminatory discharge. Neither did the plaintiff in *Magee.*

*Magee* presented unique circumstances. There, the plaintiff's three medical leaves were directly related to the continual sexual harassment she experienced at work. The plaintiff did not return to the harassing work environment after her last medical leave because the defendant had taken no steps during her leave to stop the harassment. *Magee* should be limited to its unique facts.

*Jacobson* did involve allegations of constructive discharge. It raised claims under the Whistleblowers' Protection Act (WPA),[4] not the Civil Rights Act (CRA).[5] The majority's decision to overrule *Jacobson* in favor of *Magee* is gratuitous and unnecessary in the context of this case. Here, plaintiff's claims are brought under the CRA, not the WPA.

The WPA's limitations provision was at issue in *Jacobson.* The provision requires that a civil action be brought "within 90 days after the occurrence of the alleged violation of this act." MCL 15.363(1). The *Jacobson* Court held that the limitations period began to run on the date of the plaintiff's constructive discharge.

---

[4] MCL 15.361 *et seq*.

[5] MCL 37.2101 *et seq.*

2

\

The dissent in *Jacobson*, now in the majority in this case, argued that the plaintiff did not file her complaint within 90 days of her employer's retaliatory acts.

Insofar as *Jacobson* is inconsistent with the majority's statute of limitations analysis in *Magee*, it is *Magee* that is wrongly decided. I would resolve the conflict in favor of *Jacobson*. *Jacobson* addressed the question of when a constructive discharge occurs in the context of the WPA, and cited as instructive *Champion v Nation Wide Security, Inc,* 450 Mich 702; 545 NW2d 596 (1996). In *Champion*, this Court addressed the question of constructive discharge in the context of a CRA claim, noting that constructive discharge occurs when employer conduct "'is so severe that a reasonable person in the employee's place would feel compelled to resign.'" *Jacobson, supra* at 326, quoting *Champion, supra* at 710. The date that constructive discharge occurs is not dependent on the timing of the employer's actions. It is the point at which a reasonable employee would have felt compelled to resign.

I agree with the majority that plaintiff's claims against defendant Frank Bacha fail. Bacha engaged in no discriminatory conduct within the three-year limitations period, having left in September 1998. However, I disagree with the majority's conclusion that defendant Gregory E. Pitoniak did not engage in specific acts of discriminatory conduct during the three years that preceded the filing of plaintiff's complaint.

3

\

According to plaintiff, "the Mayor [Pitoniak] kept promising and promising and promising to meet with me, and he would not meet with me." Plaintiff's September 3, 2002, deposition transcript, p 93.

> I was even under a desk one day fixing Gail's computer. Gail was one of the Mayor's two executive secretaries at the time. The Mayor walked in, told Gail that he didn't have much to do and he was going to relax this afternoon. I finished fixing the computer and stood up, and he's, oh, he says, I didn't know you were there. I've got a meeting to go to. Bye. And out he went.

                    * * *

> *Q*. Okay. So your complaint is that after Mr. Bacha left the employment of the City that thereafter the way you contend the Mayor discriminated against you was by failing to meet with you?

> *A*. [Yes.] And by not addressing the situation. [*Id.*, pp 93-94.]

Even if I agreed with the majority that the date of the adverse discriminatory act begins the running of the limitations period, I would still find plaintiff's complaint timely filed. I believe that defendant Pitoniak's act of shunning plaintiff constituted a specific incident of discriminatory conduct that occurred on every day leading up to and including plaintiff's last day of work, November 30, 1998. Thus, plaintiff's November 30, 2001, complaint was timely filed.

I would deny leave to appeal and affirm *Jacobson.*

                    Marilyn Kelly


Cavanagh, J., would deny leave to appeal.

                    Michael F. Cavanagh

4