# STATE OF MICHIGAN

# COURT OF APPEALS

BRUCE MILLAR,

        Plaintiff-Appellant,

v

CONSTRUCTION CODE AUTHORITY, ELBA TOWNSHIP, and CITY OF IMLAY CITY,

        Defendants-Appellees.

UNPUBLISHED
August 4, 2016

No. 326544
Lapeer Circuit Court
LC No. 14-047734-CZ

Before: OWENS, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

Plaintiff appeals by right a March 19, 2015, trial court order granting summary disposition in favor of defendants Construction Code Authority (CCA), City of Imlay City (the City), and Elba Township (the Township) pursuant to MCR 2.116(C)(7) and (C)(8). For the reasons set forth in this opinion, we affirm.

## I. FACTS

This suit arises from plaintiff's employment as a building/plumbing inspector for defendant CCA. CCA's Employment Manual describes the organizational structure of CCA as follows:

> [CCA] is a multi-governmental inspections and development control agency serving cities, townships, and villages in Lapeer County and surrounding counties. The CCA was formed in 1980 through an interlocal agreement between member communities under the authority of the Michigan Urban Cooperation Act of 1967. Our Board of Directors are elected annually and they function as the governing body of the CCA.
>
> The CCA provides inspection and code enforcement services to its active municipal clients in the areas of building, zoning, addressing, plumbing, mechanical, electrical, fire prevention and rental.

Plaintiff began working as an inspector for CCA on August 8, 2002; he was an at-will employee. Plaintiff was a licensed mechanical and plumbing inspector, a "plan reviewer," and a Certified Fire Inspector. Localities, including the City and Township, contracted with the CCA

-1-

for licensed inspectors. Plaintiff performed inspections in the City and Township where he would inspect local businesses and governmental buildings such as the Township's Fire Hall. Plaintiff's compensation was "directly tied to his workload."

On March 10, 2014, the Township held a Township Board meeting. At the meeting, the Board determined that it no longer wanted plaintiff to perform inspections within the Township and on March 11, 2014, the Township Supervisor, Mike Boskee, sent a letter to CCA informing CCA of the Board's decision. The letter stated that the Township did not want CCA to send plaintiff to perform inspections. The letter did not give any reasoning for its decision and records from the meeting are not included in the lower court record.

Similarly, on March 20, 2014, Dennis Collison, the City Manager for Imlay City ("City"), sent CCA a letter requesting that plaintiff not perform inspections within the City "effective immediately." The City did not provide any reasoning for its decision.

Following the Township and the City's actions, CCA drafted a letter to plaintiff on March 27, 2014, informing him that both the Township and the City "no longer wish for you to act as their plumbing and mechanical official and request that you immediately cease conducting all mechanical and plumbing inspections within their communities." However, the letter also indicated that CCA desired to retain plaintiff's employment "for the remaining municipalities" that CCA represented. In his complaint, plaintiff alleged that he received CCA's "termination letter," "no sooner than March 28, 2014, and likelier the following Monday, March 31, 2014."

On June 26, 2014, plaintiff filed a three-count complaint alleging: (1) a violation of the Whistleblowers Protection Act (WPA), MCL 15.361 et seq., (2) wrongful termination in violation of public policy, and (3) conspiracy to effectuate wrongful termination and violate the WPA. Specifically, with respect to the WPA claim, plaintiff alleged as follows:

> Plaintiff Millar was terminated . . . due to and in retaliation for his pattern of fairly and honestly indicating his intentions to report and/or reporting violations of building codes, regulations, rules and statutes in accordance with his responsibilities as an employee and as a licensed Mechanical Inspector, Plumbing Inspector, Plan Reviewer, Certified Fire Inspector and Journey [sic] Plumber.

Plaintiff's second count, wrongful termination in violation of public policy, essentially reasserted the WPA claim in that plaintiff alleged that he was terminated for reporting building code violations and claimed that the termination violated "prohibitions on employment discrimination and/or termination for activities in accordance with statutory rights or duties . . ." and violated the International Fire Code. Finally, with respect to the third count, plaintiff alleged that the Township, City and CCA all conspired to terminate him in an unlawful manner.

CCA moved for summary disposition pursuant to MCR 2.116(C)(7) and (C)(8). CCA argued that plaintiff's WPA claim was time-barred. Specifically, under MCL 15.363(1) a WPA claim must be brought within 90 days following an adverse employment action. CCA argued that its termination letter to plaintiff was dated March 27, 2014 and plaintiff's responsibilities changed on the date the letter was written. Because the letter was the alleged discriminatory act, the date on which the letter was written governed when the clock started for purposes of the 90-

day limitations period. Plaintiff filed his complaint on June 26, 2014, which was 91 days after the date on the letter. Therefore, according to CCA, plaintiff's WPA claim was time-barred.

CCA also argued that plaintiff's wrongful termination and conspiracy claims were barred by governmental immunity and that plaintiff's wrongful termination claim was identical to his WPA claim and was therefore preempted.

The Township also moved for summary disposition. The Township argued that plaintiff's WPA claim as to the Township was time-barred because the Township Supervisor wrote a letter to CCA on March 11, 2014, requesting that plaintiff no longer perform inspections. The letter was the alleged discriminatory action and plaintiff did not file his complaint until June 26, 2014, 107 days after the letter was written. The Township also argued that plaintiff's wrongful termination claim was preempted by the WPA.

Similarly, the City moved to dismiss, arguing that plaintiff's WPA claim was time-barred because plaintiff filed his complaint more than 90 days after the City Manager wrote a letter to CCA requesting plaintiff's removal. The City also argued that the WPA was plaintiff's exclusive remedy and that the conspiracy claim was barred by governmental immunity.

Plaintiff responded, arguing that his WPA claim was not time-barred because his claim did not accrue until CCA delivered the letter to him on March 31, 2014. Plaintiff attached an affidavit to his reply brief wherein he averred that CCA hand-delivered the letter to him on March 31, 2014. Plaintiff also argued that his WPA claim was not his exclusive remedy because he alleged conduct that potentially gave rise to liability on a public policy theory. Plaintiff also argued that his wrongful termination and conspiracy claims were not barred by governmental immunity.

Following oral argument, the trial court granted defendants' motions in their entirety. With respect to the WPA claim, the court held that the alleged violation of the act occurred at the latest on March 27, 2014—the date CCA drafted its letter. Therefore, plaintiff filed his complaint one day after the limitations period expired. The court rejected plaintiff's argument that the alleged violation occurred when CCA delivered the letter, finding that argument "unconvincing."

With respect to Count 2—i.e. the wrongful termination in violation of public policy—the court found that the WPA provided an exclusive remedy, explaining: "It is well settled that because the WPA represents Michigan's public policy against discharge for reporting suspected violations of law to a public body, any public policy claim of wrongful discharge arising from such activity is preempted by the WPA." The court found that plaintiff's wrongful discharge claim flowed from the same circumstances that formed his WPA claim; therefore, the WPA preempted plaintiff's public policy claim.

After dismissing plaintiff's WPA and wrongful termination claims, the court dismissed plaintiff's civil conspiracy claim and granted summary disposition in favor of all three defendants. The court entered a written order on March 19, 2015. This appeal ensued.

II. STANDARDS OF REVIEW

-3-

"This Court reviews de novo a trial court's decision on a motion for summary disposition, as well as questions of statutory interpretation and the construction and application of court rules." *Dextrom v Wexford Cty*, 287 Mich App 406, 416; 789 NW2d 211 (2010) (footnotes and citations omitted). The trial court granted summary disposition as to the WPA claim pursuant to MCR 2.116(C)(7). Summary disposition is proper under MCR 2.116(C)(7) when a claim is barred by an applicable statute of limitations.

> When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom*, 287 Mich App at 428-429 (footnotes and citations omitted).]

The trial court granted summary disposition as to the remaining two claims pursuant to MCR 2.116(C)(8). "A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999) (quotation marks and citations omitted).

### III. ANALYSIS

#### i. WPA

Plaintiff argues that the trial court erred in holding that his WPA claim was barred by the 90-day limitations period.

The WPA provides a cause-of-action for employees who suffer an adverse employment action in retaliation for reporting a violation of law or regulation as follows:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. [MCL 15.362.]

To establish a prima facie case that an employer violated the WPA, a plaintiff must establish the following three elements;

(1) The employee was engaged in one of the protected activities listed in the provision.

(2) the employee was discharged, threatened, or otherwise discriminated against regarding his or her compensation, terms, conditions, location, or privileges of employment.

(3) A causal connection exists between the employee's protected activity and the employer's act of discharging, threatening, or otherwise discriminating against the employee. [*Wurtz v Beecher Metro Dist.*, 495 Mich 242, 251-252; 848 NW2d 121 (2014) (footnotes omitted).]

Importantly, the protections set forth in the WPA "only applies to individuals who currently have the status of an 'employee.'" *Id*. And, in the event that a plaintiff suffers alleged discrimination in violation of the WPA, he or she must commence an action in circuit court within 90 days: "[a] person who alleges a violation of this act may bring a civil action for appropriate injunctive relief, or actual damages, or both *within 90 days after the occurrence of the alleged violation of this act*." MCL 15.363(1) (emphasis added).

In this case, plaintiff attached the CCA's Employee Manual to his complaint to support the proposition that CCA's "Table of Organization appears to indicate that code officials report to the Board of Directors, which in return reports to the active client municipalities . . . Defendants Imlay City and Elba Township each exert a high degree of control over Defendant [CCA] such that each may be considered an employer of Plaintiff Millar. . . ." In their dispositive motions, neither the City nor the Township challenged plaintiff's assertion. Accordingly, we proceed by addressing whether plaintiff filed his claim within 90 days after the alleged violation occurred as required by MCL 15.363(1).

Our Supreme Court addressed the issue of claim accrual in *Joliet v Pitoniak*, 475 Mich 30; 715 NW2d 60 (2006). In *Joliet*, the plaintiff worked for the city of Taylor and alleged that she suffered continual sexual and age-based discrimination beginning in 1997. *Id*. at 32-33. Eventually, in November 1998, the plaintiff went on vacation and resigned effective December 1, 1998, after determining that she could no longer work for the city. *Id*. at 33. On November 30, 2001, the plaintiff commenced suit alleging several discrimination claims. *Id*. at 34.

At issue was whether the plaintiff commenced her lawsuit within three years of the alleged wrongful conduct. *Id*. at 36. The *Joliet* Court explained that, for purposes of the limitations period, accrual is measured by "the time the wrong upon which the claim is based *was done* regardless of the time when damage results." *Id*. (quotation marks and citations omitted). The Court then proceeded to reject the plaintiff's argument that her claim accrued within the limitations period on the last day of her employment finding instead that her claims concerned conduct "that occurred before she resigned her position." *Id*. at 37. The Court explained that "it is the *employee's* wrongful act that starts the period of limitations. . . ." *Id*. at 41.

In this case, plaintiff alleged that, "In a letter dated March 27, 2014, Defendant [CCA's] Board Chairman . . . wrote to Plaintiff Millar that pursuant to the unexplained requests of

Defendants Imlay City and Elba Township . . . Plaintiff [] was terminated from performing inspection services in those jurisdictions." Plaintiff alleged that this conduct violated the WPA as follows:

> Plaintiff Millar was terminated from working as a plumbing, mechanical and/or fire inspector in the jurisdictions of Imlay City and Elba Township due to and in retaliation for his pattern of fairly and honestly indicating his intentions to report and/or reporting violations of building codes, regulations, rules and statutes in accordance with his responsibilities as an employee and as a licensed Mechanical Inspector, Plumbing Inspector, Plan Reviewer, Certified Fire Inspector and Journey[sic] Plumber.

In essence, plaintiff alleged that CCA, acting in accord with the directives of the City and Township, terminated his employment in retaliation for his reporting various code violations. Plaintiff argues that the 90-day time deadline started on the day that he received the letter—i.e. March 31, 2014. However, a claim accrues at "the time the wrong upon which the claim is based *was done* regardless of the time when damage results." *Joliet*, 475 Mich at 36. Here, the alleged wrong occurred when the City and Township wrote the letters to the CCA directing the CCA to terminate plaintiff allegedly in retaliation for his protected activity. In other words, while damages resulted when plaintiff received the letter, the wrong upon which plaintiff's claim is based occurred when the City and Township terminated plaintiff in retaliation for his protected activity—i.e. March 11, 2014 and March 20, 2014. Therefore, plaintiff was required to commence his WPA action within 90 days of those dates. Plaintiff failed to do so. Instead, plaintiff filed his complaint on June 26, 2014, 107 and 98 days respectively after the allegedly wrongful conduct took place. Moreover, even if we were to assume that CCA's conduct was the allegedly wrongful conduct that commenced the 90-day clock, plaintiff filed his complaint 91 days after CCA's alleged wrongful act—i.e. termination of plaintiff's assignments in the City and the Township on March 27, 2014. *Id.*

Plaintiff argues that if the dates on the letters triggered the limitations period, then equitable tolling should apply because he did not receive the letter until several days later. This argument lacks merit. Our Supreme Court has explained that "[a]lthough courts undoubtedly possess equitable power, such power has traditionally been reserved for 'unusual circumstances' such as fraud or mutual mistake. A court's equitable power is not an unrestricted license for the court to engage in wholesale policymaking." *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 590; 702 NW2d 539 (2005) (footnotes omitted). Here, there were no allegations of fraud or mutual mistake. The record does not support that CCA, the City or the Township intentionally held the letters to cause undue delay or to "run out the clock." Rather, plaintiff received the termination letter within the same month and, after receiving the letter he had more than two months to file a timely complaint. In short, the trial court did not err in concluding that plaintiff's WPA claim was time barred under MCL 15.363(1).

## ii. Wrongful Termination/Public Policy

As noted above, plaintiff alleged that he was terminated in retaliation for reporting or threatening to report various violations that he discovered during the course of his inspections within the City and Township. Plaintiff alleged that this violated the WPA. With respect to

plaintiff's wrongful termination in violation of public policy claim, plaintiff alleged that the same conduct amounted to wrongful termination in violation of public policy. Specifically, plaintiff appears to have virtually copied and pasted the paragraph from his WPA claim into a separate wrongful termination/public policy claim.

Our Supreme Court has explained that the WPA provides an exclusive remedy for claims alleging retaliation for reporting an employer's violation of the law as follows:

> As a general rule, the remedies provided by statute for violation of a right having no common-law counterpart are exclusive, not cumulative. At common law, there was no right to be free from being fired for reporting an employer's violation of the law. The remedies provided by the WPA, therefore, are exclusive and not cumulative.
>
> * * *
>
> The existence of the specific prohibition against retaliatory discharge in the WPA is determinative of the viability of a public policy claim. In those cases in which Michigan courts have sustained a public policy claim, the statutes involved did not specifically proscribe retaliatory discharge. Where the statutes involved did proscribe such discharges, however, Michigan courts have consistently denied a public policy claim . . . *A public policy claim is sustainable, then, only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue*. As a result, because the WPA provides relief to [the plaintiff] for reporting his fellow employee's illegal activity, his public policy claim is not sustainable. [*Dudewicz v Norris-Schmid, Inc*, 443 Mich 68, 78-80; 503 NW2d 645 (1993), overruled in part on other grounds, *Brown v Detroit Mayor*, 478 Mich 589, 595 n 2; 734 NW2d 514 (2007) (quotation marks and citations omitted) (emphasis added).]

Although plaintiff argues that his public policy claim is distinct from his WPA claim and contends that the claims involve various complex factual allegations, a review of the complaint shows that the crux of both claims arise from the same alleged wrongful conduct—i.e. retaliatory termination for reporting various code violations. See *Adams v Adams*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007) (noting that "[i]t is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim") (quotation marks and citations omitted). In this case, the WPA provided a statutory remedy for the alleged retaliation in response to plaintiff's reporting the various violations. *Dudewicz*, 443 Mich at 78-80. That remedy was "exclusive and not cumulative;" therefore, although plaintiff failed to meet the WPA's limitations period,

plaintiff's wrongful termination/public policy claim was preempted by the WPA and was not sustainable and the trial court did not err in dismissing the claim.[1]  *Id.* at 80.

### iii. Civil Conspiracy

Finally, plaintiff argues that the trial court erred in dismissing his civil conspiracy claim. However, given our conclusion that plaintiff's WPA claim was time-barred and the wrongful termination claim failed as a matter of law, necessarily, his conspiracy claim also fails as a matter of law.  See *Cousineau v Ford Motor Co*, 140 Mich App 19, 37; 363 NW2d 721 (1985) ("An allegation of civil conspiracy, standing alone, is not actionable," and conspiracy "cannot exist independently of an underlying tortious act.")

Moreover, plaintiff alleged that the City and Township exercised control over CCA through appointment of CCA's board of directors such that the City and Township constituted plaintiff's "employer" for purposes of the WPA.  In essence, plaintiff claimed that the CCA was an extension of the City and the Township and neither the City nor the Township challenged plaintiff's assertion.

With respect to plaintiff's conspiracy claim, however, plaintiff alleged that CCA, the City and the Township constitute three separate entities that conspired together to terminate him in violation of the WPA.  However, because plaintiff alleged that the three entities were one-in-the same for purposes of the WPA, plaintiff cannot show that there were three separate entities that conspired together to terminate him.  Plaintiff's conspiracy claim therefore failed as a matter of law.  *Urbain*, 301 Mich App at 131-132.

Affirmed.  No costs awarded.  MCR 7.219(A).


/s/ Donald S. Owens
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens

---

[1] Given our resolution of this issue, we need not address defendants' arguments that Counts II and III were barred by governmental immunity.