*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STEPHANIE JEMISON and DANIELLE NASSER,

Plaintiffs-Appellants,

v

RSR VALLEY, LLC, doing business as
SANDALWOOD VALLEY II,

Defendant-Appellee.

UNPUBLISHED
April 16, 2026
11:02 AM

No. 375031
Macomb Circuit Court
LC No. 2024-003874-CD

Before: CAMERON, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

Plaintiffs sued their former employer, RSR Valley, for violations of the Whistleblowers' Protection Act (WPA) and for wrongful discharge under public policy. The trial court granted defendant's motion for summary disposition because the statute of limitations on plaintiffs' WPA claims began when they were laid off and their public-policy claims were preempted by statute. We affirm the trial court's decision.

## I. BACKGROUND

While working at defendant's nursing home and rehabilitation facility as direct care workers, plaintiffs contacted the state and the Licensing and Regulatory Affairs (LARA) department about their concerns with the facility's conditions, which led to state officials' investigation of the facility. Plaintiffs stopped working at defendant's facility about a month after plaintiffs' reports and the state investigation because of an alleged suspension or layoff. Plaintiffs' complaint specifically alleged the following:

23. In March of 2024, both Plaintiffs were arbitrarily suspended and were supposed to be brought back.

24. However, both Plaintiffs were notified that they were apparently "laid off" and could seek re-employment at a later date.

In August 2024, plaintiffs reached out to their managers, inquiring about "getting [their] job[s] back"; they were informed that the building had been sold and that defendant was no longer hiring workers.

Approximately two months after contacting their managers, plaintiffs sued defendant, claiming a violation of the WPA because allegedly, in August 2024, defendant "took adverse, retaliatory action against Plaintiffs including, but not limited to, denying Plaintiffs conditions, terms, opportunities, and privileges provided to other employees of Defendant, culminating in Plaintiff[s'] constructive discharge[s]" as a result of their reports to the state and LARA. Additionally, plaintiffs alleged that other locations operated by defendant continued to hire. Plaintiffs also sued for wrongful discharge under Michigan public policy based on the alleged constructive discharge.

Defendant moved for summary disposition under MCR 2.116(C)(7) and MCR 2.116(C)(8), alleging that its facility closed in April 2024 and their license to operate an adult foster home expired in May 2024. When plaintiffs contacted their managers in August 2024, defendant argued that those were "former managers" and that plaintiffs were seeking "re-employment" with a separate entity, RSR Serenity, which was not a defendant in this suit. Defendant argued that plaintiffs' claims under the WPA were untimely because plaintiffs were discharged in March 2024, which is when their claims accrued. On plaintiff's public-policy claims, defendant argued that the WPA preempted such claims. Further, defendant argued that plaintiffs' argument that the "wrongdoing" was RSR Serenity's failure to "re-hire" them in August 2024 failed because defendant, not RSR Serenity, was the employer.

In response to defendant's motion for summary disposition, plaintiffs argued that they thought they were suspended indefinitely and were not formally discharged until August 2024. Plaintiffs argued that defendant's assertion about RSR Serenity "misse[d] the mark," because the two companies were owned by the same member and one plaintiff worked at RSR Serenity's location in the past so it was "her joint employer." Further, plaintiffs claimed that the "discrepancies warrant[ed] further fact development." For their public-policy claim, plaintiffs simply argued that they were "permitted to plead an alternative, inconsistent claim." At the hearing on defendant's motion, plaintiffs argued that the discrimination and the statute of limitations started when defendant "could rehire people."

The trial court ultimately granted defendant's motion for summary disposition and dismissed the case. On plaintiffs' WPA claims, summary disposition was granted because the WPA claims were brought after the 90-day statute of limitations. The trial court found that plaintiffs were discharged in March 2024 because their complaint used the terms "laid off" and "layoffs" as well as referred to plaintiffs' attempts at getting their jobs back, which "necessitates the conclusion that one had lost their job." As for plaintiffs' rehiring argument, the trial court found that defendant and RSR Serenity were two distinct companies and RSR Serenity was not a party to this lawsuit. Plaintiffs' claims under public policy were dismissed because the WPA provided exclusive protection from retaliatory discharge. The trial court subsequently denied plaintiffs' motion for reconsideration.

Plaintiffs now appeal.

## II. ANALYSIS

### A. WHISTLEBLOWERS' PROTECTION ACT

On appeal, plaintiffs argue that the trial court erred in granting defendant's motion for summary disposition on plaintiffs' WPA claim based on the statute of limitations. We review de novo a trial court's decision on summary disposition. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). A claim may be appropriately dismissed under MCR 2.116(C)(7) because of the statute of limitations. For a motion under MCR 2.116(C)(7), the allegations in plaintiffs' complaint are accepted as true unless defendant submits documentation that contradicts the complaint. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999).

Under MCL 15.362, an employer violates the WPA under the following circumstances:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

To establish a prima facie case under the WPA, plaintiffs must show that (1) they were engaged in a protected activity as defined by the WPA, (2) they suffered an adverse employment action, and (3) a causal connection existed between the protected activity and the adverse employment action. *Esordi v Twp of Macomb*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 366541); slip op at 9. A plaintiff who alleges a violation of the WPA may bring a civil action "within 90 days after the occurrence of the alleged violation of this act." MCL 15.363(1).

Plaintiffs argue that defendant's violation of the WPA occurred in August 2024 when they were informed by their former managers that the facility had been sold and defendant was no longer hiring. For a violation of the WPA, defendant as an employer must have a committed a discriminatory, adverse employment action against one of their employees. See MCL 15.362 ("An employer shall not discharge, threaten, or otherwise discriminate against an employee."). To be employees, plaintiffs needed to be performing services for wages under an express or implied contract of hire. MCL 15.361. Plaintiffs argued that the adverse action was a constructive discharge that occurred in August 2024 when plaintiffs were still employees. "In the context of a constructive discharge, it is the employer's wrongful act that starts the period of limitations by causing the employee to feel compelled to resign, not the employee's response." *Joliet v Pitoniak*, 475 Mich 30, 41; 715 NW2d 60 (2006) (cleaned up).

Plaintiffs argue that their layoffs in March 2024 were not terminations and instead compared them to temporary suspensions. See *Collins v Comerica Bank*, 468 Mich 628, 635; 664 NW2d 713 (2003). Accepting plaintiffs' unrebutted allegations in their complaint as true, plaintiffs were informed in March 2024 that they were laid off and could seek "re-employment"

at a later date. The term "re-employment" logically implies that the layoff was not a temporary condition, but rather an actual termination of employment. Had plaintiffs understood the March 2024 layoff as merely temporary, there would be no reason to have to seek employment again, i.e., "re-employment," at a later date.

Thus, the 90-day clock for plaintiffs' WPA claims began sometime in March 2024, meaning it expired sometime in June 2024, well before plaintiffs reached out to their former managers. The trial court did not err in granting summary disposition to defendant on plaintiffs' WPA claims.

## B. PUBLIC-POLICY CLAIMS

Plaintiffs also argue on appeal that the trial court erred in dismissing their public-policy claims of wrongful discharge based on the WPA preempting such claims. A motion under MCR 2.116(C)(8) "tests whether the complaint states a claim as a matter of law," and should be granted if, accepting all well-pleaded allegations as true, "no factual development could possibly justify recovery." *Teel v Meredith*, 284 Mich App 660, 662; 774 NW2d 527 (2009). "[A] plaintiff asserting a claim for termination in violation of public policy that arises from circumstances that establish a claim for relief under the WPA will be subject to the WPA's exclusive remedy and will not be permitted to evade the 90-day limitations period by recasting the claim as a public-policy claim." *Anzaldua v Neogen Corp*, 292 Mich App 626, 631-632; 808 NW2d 804 (2011).

Here, plaintiffs attempt to evade the statute of limitations by reframing their claims as arising under Michigan's public policy. But for the statute of limitations discussed in the previous section, plaintiffs' claims against defendant for wrongful discharge would have been evaluated under the WPA. In their response to summary disposition and on appeal, plaintiffs fail to show how allowing more discovery would support their argument that their public-policy claims are not preempted by the WPA. Therefore, the trial court did not err when it granted summary disposition on their public-policy claims as well.

Affirmed.

/s/ Thomas C. Cameron
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle