# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## MILLAR v CONSTRUCTION CODE AUTHORITY

Docket No. 154437. Argued on application for leave to appeal November 8, 2017. Decided March 29, 2018.

On June 26, 2014, Bruce Millar brought an action in the Lapeer Circuit Court against the Construction Code Authority (CCA), Elba Township, and Imlay City, alleging violation of the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*; wrongful termination in violation of public policy; and conspiracy to effectuate wrongful termination and violate the WPA. Millar had performed mechanical and plumbing inspection services for the CCA, an inspection and development control agency, which had contracts with Imlay City and Elba Township to provide licensed inspections. On March 11 and March 20, 2014, Imlay City and Elba Township each wrote letters to the CCA directing it to terminate Millar's inspection services within their communities. On March 27, the CCA drafted a letter to Millar stating that he would no longer perform inspections in those communities, but it was not until Millar arrived at work on March 31 that he was given a copy of the CCA's letter. That same day, he was prevented from working in Imlay City. The Lapeer Circuit Court, Nick O. Holowka, J., granted summary disposition on all counts to the defendants, ruling that the WPA claim was time-barred because the WPA violation occurred, at the latest, on March 27, when the CCA drafted its letter, and therefore Millar had filed his claim one day after the 90-day limitations period in MCL 15.363(1) had run. The court also concluded that the WPA preempted Millar's public-policy claim. The Court of Appeals, OWENS, P.J., and BORRELLO and STEPHENS, JJ., affirmed in an unpublished per curiam opinion issued August 4, 2016 (Docket No. 326544). Millar applied for leave to appeal in the Supreme Court, which ordered and heard oral argument on whether to grant the application or take other peremptory action. 500 Mich 992 (2017).

In a unanimous opinion by Justice MCCORMACK, the Supreme Court, in lieu of granting leave to appeal, *held*:

The running of the limitations period in MCL 15.363(1) is triggered by an employer's action to implement the decision that is alleged to violate the WPA. Accordingly, the running of the limitations period in this case began when the CCA took an adverse employment action to alter Millar's employment on March 31, 2014. The Court of Appeals erred by relying on *Joliet v Pitoniak*, 475 Mich 30 (2006), to conclude that the alleged wrong occurred either when the city and township wrote letters to the CCA directing it to revoke the plaintiff's authority to work in their jurisdictions or when the CCA in turn drafted its letter to the plaintiff carrying out those

directions. Because the defendants took no action to curtail the plaintiff's employment responsibilities before March 31, 2014, the plaintiff had no actionable WPA claim until that date, which is when the allegedly discriminatory action occurred. Therefore, Millar's WPA claim was timely filed, and the Court of Appeals erred by affirming the trial court's grant of summary disposition to the defendants.

Court of Appeals judgment reversed in part; circuit court order granting summary disposition to the defendants vacated; case remanded to the circuit court for further proceedings.

Justice CLEMENT took no part in the decision of this case.

©2018 State of Michigan

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

FILED March 29, 2018

STATE OF MICHIGAN

SUPREME COURT

BRUCE MILLAR,

      Plaintiff-Appellant,

v                                                                                    No. 154437

CONSTRUCTION CODE AUTHORITY,
ELBA TOWNSHIP, and CITY OF IMLAY
CITY,

      Defendants-Appellees.

_____

BEFORE THE ENTIRE BENCH (except CLEMENT, J.)

MCCORMACK, J.

At issue in this case is when the limitations period in the Whistleblowers'
Protection Act (WPA), MCL 15.361 *et seq*., begins running. The defendant Construction
Code Authority (CCA) told the plaintiff, one of its inspectors, that he had been
terminated by the defendants Imlay City and Elba Township when he showed up for
work on March 31, 2014. It was the CCA's action on that day that triggered the running

of the limitations period, not the defendants' earlier decisions to terminate him, as no action was taken by any defendant to effectuate those decisions. We therefore reverse the Court of Appeals' holding that the alleged wrong triggering the running of the limitations period "occurred when the City and Township wrote the letters to the CCA directing the CCA to terminate plaintiff . . . ." *Millar v Constr Code Auth*, unpublished per curiam opinion of the Court of Appeals, issued August 4, 2016 (Docket No. 326544), p 6. We further reverse the Court of Appeals to the extent that it held the plaintiff's WPA claim untimely "even if we were to assume that CCA's conduct was the allegedly wrongful conduct that commenced the 90-day clock," citing as the CCA's alleged wrongful act its "termination of plaintiff's assignments in the City and the Township on March 27, 2014." *Id*. On March 27, 2014, the CCA drafted its own letter to the plaintiff communicating the bad news from the city and township defendants, but as noted it did nothing to effectuate that decision until March 31. *Id*.

The statutory limitations period on the plaintiff's WPA claim therefore did not begin running until the CCA took action to alter the plaintiff's employment on March 31, 2014. Because his complaint was filed 87 days later, it was timely filed under MCL 15.363(1). We reverse the Court of Appeals' judgment in part, vacate the Lapeer Circuit Court's March 19, 2015 order granting summary disposition to the defendants, and remand this case to the Lapeer Circuit Court for further proceedings consistent with this opinion.[1]

---

[1] The plaintiff also argues that his wrongful termination violated public policy and, for the first time in this Court, that the lower courts abused their discretion by denying him

2

## I. FACTS AND PROCEDURAL HISTORY

The plaintiff performed mechanical and plumbing inspection services for the defendant CCA, an inspection and development control agency. The CCA had contracts with, among others, the defendants Imlay City and Elba Township to provide licensed inspections, and the plaintiff had performed numerous inspections within those jurisdictions. On March 11 and March 20, 2014, the defendant city and the defendant township respectively wrote letters to the CCA directing it to terminate the plaintiff's inspection services within their communities. On March 27, the CCA drafted a letter to the plaintiff to do just that; the letter stated that the plaintiff would no longer perform inspections in those communities.[2] But it was not until the plaintiff arrived at work on March 31 that he was given a copy of the CCA's letter notifying him of the decision to terminate his services in the defendant communities.[3] As a result, that same day he was prevented from working in Imlay City.

---

an opportunity to amend his complaint. We deny leave to appeal with respect to those arguments because we are not persuaded that they should be reviewed by this Court.

[2] The letter indicated that the plaintiff would still be retained to perform inspections in other municipalities. Because the plaintiff's workload directly affected his level of compensation, the defendants' actions negatively affected the plaintiff's terms of employment.

[3] The plaintiff initially alleged that he received the letter "no sooner than March 28, 2014, and likelier the following Monday, March 31, 2014," but subsequently clarified that he received it on March 31. Even if this point was disputed, the discrepancy would not alter our legal analysis because the plaintiff's suit was filed 90 days after March 28, so it still would be timely filed if that were the relevant date.

The plaintiff filed a three-count complaint alleging violation of the WPA,[4] wrongful termination in violation of public policy, and conspiracy to effectuate wrongful termination and violate the WPA. The trial court granted summary disposition on all counts to all the defendants. The court reasoned in relevant part that the WPA claim was time-barred because the WPA violation occurred, at the latest, on March 27, when the CCA drafted its letter, and therefore the plaintiff had filed his claim one day after the 90-day limitations period in MCL 15.363(1) had run. The trial court also concluded that the WPA preempted the plaintiff's public-policy claim.[5] The Court of Appeals affirmed. The plaintiff appealed here, asserting his WPA and public-policy claims but dropping the civil-conspiracy claim. We ordered oral argument on the application and directed the parties to brief "whether the plaintiff's claim under the Whistleblowers' Protection Act was barred by the 90-day limitation period set forth in MCL 15.363(1)." *Millar v Constr Code Auth*, 500 Mich 992 (2017).

## II. LEGAL BACKGROUND AND ANALYSIS

This case involves an issue of statutory interpretation, which we review de novo. *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013). This means that we review the issue independently, without any required deference to the trial court.

---

[4] The plaintiff's WPA claim alleged that he was "terminated" because of "and in retaliation for his pattern of fairly and honestly indicating his intentions to report and/or reporting violations of building codes, regulations, rules and statutes in accordance with his responsibilities as an employee and as a licensed Mechanical Inspector, Plumbing Inspector, Plan Reviewer, Certified Fire Inspector and Journey [sic] Plumber."

[5] The court dismissed the plaintiff's conspiracy claim because his WPA and public-policy claims had been dismissed and civil conspiracy is not an independently actionable tort.

4

The Whistleblowers' Protection Act, MCL 15.362, provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

MCL 15.363(1), the statute of limitations governing WPA actions, provides that "[a] person who alleges a violation of this act may bring a civil action for appropriate injunctive relief, or actual damages, or both within 90 days after the occurrence of the alleged violation of this act."

The question in this case is what constitutes "the occurrence of the alleged violation of this act" that triggers the running of the statutory limitations period. In *Collins v Comerica Bank*, 468 Mich 628; 664 NW2d 713 (2003), this Court held that the limitations period applicable to claims under the Civil Rights Act (CRA), MCL 37.2101 *et seq*.,[6] did not begin running until the date the plaintiff was terminated. We rejected the Court of Appeals' contrary conclusion that the plaintiff's cause of action accrued on the last day the plaintiff worked, a date that preceded her termination.

---

[6] CRA claims are subject to the three-year period of limitations in MCL 600.5805(10), and the accrual of that limitations period is governed by MCL 600.5827, which provides, in relevant part, that a "claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." Because both MCL 600.5827 and MCL 15.363(1) tie the running of the statutory limitations period to the actionable wrong, CRA cases interpreting when the limitations period commences running are instructive in resolving the same issue in the WPA context.

By contrast, in *Magee v DaimlerChrysler Corp*, 472 Mich 108; 693 NW2d 166 (2005), and *Joliet v Pitoniak*, 475 Mich 30; 715 NW2d 60 (2006), also CRA cases, this Court distinguished *Collins* and held that the plaintiffs' discrimination claims were untimely because the last date of the alleged discriminatory treatment, and not the employee's separation from employment, started the limitations period.[7]  Critical to our rulings in both of those decisions was the fact that neither plaintiff asserted a claim of discriminatory discharge.  *Magee*, 472 Mich at 112 (distinguishing *Collins* because it involved a claim of discriminatory discharge); *Joliet*, 475 Mich at 36-37 (same).

In this case, the Court of Appeals erred by relying on *Joliet* to conclude that the alleged wrong occurred either when the city and township wrote letters to the CCA directing it to revoke the plaintiff's authority to work in their jurisdictions or when the CCA in turn drafted its letter to the plaintiff carrying out those directions.  At the time each letter was written, the plaintiff had no actionable WPA claim because no allegedly discriminatory action had occurred; the defendants *intended* to curtail the plaintiff's employment responsibilities, but had not taken any action to implement that intent.  It was not until that intent was effectuated on March 31, 2014, that the actionable "wrong"

---

[7] In *Magee*, the plaintiff alleged sexual harassment ending on September 12, 1998, when she went on medical leave; the plaintiff resigned on February 2, 1999.  *Magee*, 472 Mich at 110.  This Court rejected the latter date as the accrual date for her discrimination claims and concluded that September 12, 1998 (the last date of the alleged harassment) was the accrual date.  *Id*. at 112-113.  In *Joliet*, a constructive-discharge case, the plaintiff alleged harassment and discrimination occurring before her resignation on November 30, 1998.  *Joliet*, 475 Mich at 33.  This Court held that the plaintiff's November 30, 2001 complaint was not timely filed because her claims all accrued when the alleged harassment and discrimination occurred—before November 30, 1998.  *Id*. at 45.

6

occurred and triggered the running of the 90-day limitations period in MCL 15.363(1). See *Collins*, 468 Mich at 633 ("[I]f a discharge has yet to occur, it cannot be said that the last day worked represents the discharge date. Simply put, a claim for discriminatory discharge cannot arise until a claimant has been discharged."). While the plaintiff was not *discharged* from his employment on March 31 (his employment responsibilities were merely reduced), that fact does not change the conclusion that this case is more analogous to *Collins* than to *Magee* and *Joliet*. The plaintiff showed up for work on March 31 prepared to go perform inspections in Imlay City, in accordance with his typical employment responsibilities, but he was prevented from doing that when the CCA presented him with its March 27 letter.[8] Nothing prevented the plaintiff from working up until that action, and the defendants do not argue that they did anything to implement the termination decision before March 31.

In other words, in order for an actionable wrong under the WPA to have occurred, an employer must have done more than simply make a decision to discriminate against an employee. Instead, the employer must have taken an adverse employment action against the plaintiff.[9] It is the employer's *action* to implement the decision that triggers the

---

[8] Because the writing of the letters did not trigger the running of the limitations period, and the defendants do not allege that any other alleged act committed before March 31 started it running, we need not decide what specific act by the defendants on March 31 was the trigger. Specifically, we need not address whether the communication of the adverse decision to the plaintiff, the CCA's preventing the plaintiff from working in Imlay City on March 31, or some other action constituted the triggering act.

[9] See *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013) ("Under the WPA, a plaintiff may establish a prima facie case by showing that (1) the plaintiff was engaged in protected activity as defined by the act, (2) the defendant *took an adverse employment action against the plaintiff*, and (3) a causal connection exists between the

---

7

running of the limitations period; not the decision itself. In this case, the CCA took no action to implement its decision to reduce the plaintiff's duties until it gave the plaintiff the letter instructing him to discontinue working in Imlay City and Elba Township.

The flaw in the Court of Appeals' reliance on *Joliet* is made plain with a simple illustration. The Court of Appeals held that the limitations period began running as to Imlay City on March 11, when it drafted its letter to the CCA directing the agency to terminate the plaintiff. But the plaintiff continued working in Imlay City until March 27. Plainly, no allegedly discriminatory action had "occurr[ed]" as of March 11, because the defendants had not altered the plaintiff's employment in any way. Under the Court of Appeals' view, the plaintiff could have brought suit against Imlay City on March 12 on the basis of the city's letter to the CCA, even though nothing whatsoever changed in the plaintiff's employment. We rejected such an approach in *Collins*.

Because "the occurrence of the alleged violation" of the WPA did not occur until the CCA allegedly discriminated against the plaintiff with respect to his terms of employment on March 31, 2014, the plaintiff timely filed his WPA claim. Accordingly, the lower courts erred by dismissing it.

## III. CONCLUSION

We hold that the Court of Appeals erred by relying on our decision in *Joliet* to conclude that the statutory limitations period began running before March 31, 2014, the day of the "occurrence of the alleged violation of the act." Rather, the rule from *Collins*

---

protected activity and the adverse employment action.") (emphasis added; quotation marks and citations omitted).

8

applies. We therefore reverse the Court of Appeals judgment in part, vacate the Lapeer Circuit Court's March 19, 2015 order granting summary disposition to the defendants, and remand to the circuit court for further proceedings consistent with this opinion.

Bridget M. McCormack
Stephen J. Markman
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder

CLEMENT, J., took no part in the decision of this case.

9