# STATE OF MICHIGAN

# COURT OF APPEALS

WHITLEY APACANIS,

Plaintiff-Appellant,

v

DOMINIQUE CARTER and SERVICES TO ENHANCE POTENTIAL

Defendants-Appellees.

UNPUBLISHED
December 20, 2018

No. 339241
Wayne Circuit Court
LC No. 16-008061-CD

Before: CAVANAGH, P.J., and SERVITTO and CAMERON, JJ.

PER CURIAM.

Plaintiff, Whitley Apacanis, appeals the trial court's order granting defendants, Dominique Carter and Services to Enhance Potential (STEP), summary disposition of her claims that, in suspending her from her job[1] with STEP, defendants violated the Whistleblowers' Protection Act (WPA), MCL 15.361, *et seq.*, and that they retaliated against her in violation of the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.* We affirm in part, reverse in part, and remand for the reasons set forth in this opinion.

## I. FACTS AND PROCEDURAL HISTORY

STEP is a private, nonprofit entity that contracts with the Detroit/Wayne County Mental Health Authority (the Authority) to provide services to people who have mental health issues or other disabilities. Plaintiff received job-training assistance from STEP. Carter, a STEP employee who serves as a liaison between STEP "clients" like plaintiff and outside agencies, described this as "on-the-job training" in which STEP clients would work in STEP's workshop assembling items piecemeal. STEP paid clients a small amount for this work.

One evening, plaintiff and another STEP client, Samuel Eiland, met at Eiland's home and engaged in a number of consensual sexual acts. Plaintiff alleges that at some point in the evening, however, Eiland attempted an additional sexual act to which she did not consent, and

---

[1] Although defendants assert that plaintiff is not actually a STEP employee, they also concede that, for purposes of both the summary-disposition motion and this appeal, she was an employee.

-1-

Eiland sexually assaulted her. It is undisputed that plaintiff reported the alleged sexual assault to the police and to defendants, and that she also reported the assault to the circuit court by way of her petition for a personal-protection order (PPO) against Eiland. The sexual interactions happened in a private home outside of working hours, and plaintiff had not alleged any assaultive behavior at work. Eiland was removed from STEP premises and suspended as a STEP client as soon as defendants learned of plaintiff's allegations. Importantly—and of special significance for this case—the parties do not dispute that defendants also suspended plaintiff, and that the cause for that suspension was plaintiff's reporting of the alleged crime to the police and obtaining a PPO. Indeed, defendants issued a written notice of suspension explicitly citing the criminal charges against Eiland as the reason for the suspension: "The reason for this action is: Consumer suspended from program until completion of pending criminal investigation." Nonetheless, the trial court granted defendants summary disposition with respect to all of plaintiff's claims on the ground that defendants were justified to do so because they also suspended Eiland.[2]

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision regarding a motion for summary disposition." *Ensink v Mecosta Co Gen Hosp*, 262 Mich App 518, 523; 687 NW2d 143 (2004). "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Ensink*, 262 Mich App at 523, quoting *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996) (quotation marks omitted). Summary disposition under MCR 2.116(C)(10) is appropriate "if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Ensink*, 262 Mich App at 523, quoting *Quinto*, 451 Mich at 362 (quotation marks omitted).

## III. ANALYSIS

### A. PLAINTIFF'S WPA CLAIM

The WPA prohibits employers from taking adverse employment actions against employees who report violations of the law to a public body:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public

---

[2] On appeal, plaintiff has only raised issues with respect to the trial court's rulings on her WPA claim and her ELCRA retaliation claim.

body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. [MCL 15.362.]

A "public body" includes a law-enforcement officer or agency, and also the judiciary and its members and employees. MCL 15.361(d)(*v*) and (d)(*vi*).

Plaintiffs may establish a prima facie case under the WPA by showing "(1) the plaintiff was engaged in protected activity as defined by the act, (2) the defendant took an adverse employment action against the plaintiff, and (3) 'a causal connection exists between the protected activity' and the adverse employment action." *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013), quoting *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 399; 572 NW2d 210 (1998). Contrary to defendants' apparent position, an "adverse employment action" is not limited to termination but instead includes "discharg[ing], threaten[ing], or otherwise discriminat[ing]" against a plaintiff. MCL 15.362. In *Millar v Constr Code Auth*, 501 Mich 233, 240; 912 NW2d 521 (2018), for example, the plaintiff was not fired; instead, his "employment responsibilities were merely reduced." Further, "the violation or suspected violation at issue need not be one committed by the employer or one of the plaintiff's coworkers; rather, the scope of the WPA is 'broad enough to cover violations of the law by a third person.' " *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, 316 Mich App 1, 17; 891 NW2d 528 (2016), quoting *Chandler*, 456 Mich at 404.

"To establish a prima facie case, a plaintiff can rely on either direct evidence of retaliation or indirect evidence." *McNeill-Marks*, 316 Mich App at 17. "If the plaintiff establishes a prima facie case, a presumption of retaliation arises, which the employer can rebut by offering 'a legitimate reason for its action . . . .' " *Id*. at 17-18, quoting *Debano-Griffin*, 493 Mich at 176. In other words, when a plaintiff makes a prima facie WPA claim, a defendant employer must be able to "otherwise justify the adverse employment action" by showing that there was some reason for it other than the WPA-protected conduct. *Debano-Griffin*, 493 Mich at 176.

In this case, there was direct evidence of retaliation. Plaintiff reported a violation of law to the police, she was suspended by defendants for making the report, and defendants admit that the suspension was directly linked to making the report. Even if there was no direct evidence of retaliation, a prima facie case is just as easily established: the parties do not dispute that plaintiff was engaged in a "protected activity" (reporting an alleged violation of the law to a "public body"—the police and the court that granted plaintiff a PPO), and defendants explicitly stated that they suspended plaintiff as a result of the criminal investigation prompted by her police report. Defendants do not claim that there is some other reason, unrelated to her report to police, that led them to suspend her. Instead, defendants assert, essentially, that the suspension was not an adverse employment action because they eventually offered to reinstate plaintiff. However, there can be no dispute that for a period of several weeks plaintiff was suspended, and therefore prevented from receiving services and earning pay from STEP, and that her suspension was based solely on her decision to report Eiland and his alleged sexual assault of plaintiff to police.

Defendants also claim that, although they suspended plaintiff for initiating a criminal investigation against Eiland, that suspension was justified because STEP officials consulted with the Detroit/Wayne County Mental Health Authority, which allegedly informed them that sections of the state mental health code required defendants to treat plaintiff and Eiland the same—either to refrain from punishing both or to punish both equally—because both were recipients of mental health services from STEP. Defendants have provided no citation to any authority that supports the proposition that the victim of an alleged crime should be treated exactly the same as the alleged perpetrator.[3] "[A party] may not merely announce its position or assert an error and leave it to this Court to discover and rationalize the basis for its claims, unravel or elaborate its argument, or search for authority for its position." *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 499; 668 NW2d 402 (2003).

Likewise, the plain language of the WPA offers only one exception to its prohibition against taking an adverse employment action as retaliation for otherwise protected conduct: if the employee knowingly makes a *false report* about the alleged violation of law.[4] There is not, as defendants seem to believe, an exception granted for employers who feel they can justify conduct that otherwise violates the WPA. Here, because the undisputed evidence on this record satisfies all of the elements of a prima facie case that defendants violated the WPA, it was improper for the trial court to grant defendants summary disposition.

## B. PLAINTIFF'S ELCRA CLAIM

The ELCRA prohibits retaliation against someone for opposing a violation of the ELCRA or for making a complaint or assisting an investigation about an alleged violation of the statute:

> Two or more persons shall not conspire to, or a person shall not:
>
> (a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act. [MCL 37.2701(a).]

---

[3] The written suspension form sent to plaintiff cited federal regulation, 42 CFR 440.230(d), and the Michigan Medicaid Provider Manual, Chapter 3, as the legal basis for suspending plaintiff, but our review of those sources provides no support for plaintiff's suspension for reporting a crime allegedly committed by Eiland. According to 42 CFR 440.230(d), "The agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." No specific provision of the manual has been provided that would support defendants' position.

[4] There is no evidence or allegation here that plaintiff's report was false, knowingly or otherwise.

A plaintiff must establish the following to make a prima facie ELCRA retaliation claim:

> "(1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." [*Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 273; 696 NW2d 646 (2005), quoting *DeFlaviis v Lord & Taylor, Inc*, 223 Mich App 432, 436; 566 NW2d 661 (1997).]

In reviewing an ELCRA retaliation claim, the issue is not whether the defendant generally retaliated against the plaintiff improperly, but rather "the issue is whether defendant retaliated against plaintiff *specifically* for conduct on her part protected by the Civil Rights Act." *Garg*, 472 Mich at 272.

Here, while the record is clear that defendants retaliated against plaintiff in violation of the WPA for making a police report and filing for a PPO, the record also shows no evidence that plaintiff's suspension was connected in any way to her attempting to file a complaint or assert her rights under the ELCRA. The alleged sexual assault occurred offsite, outside of working hours, and there is no evidence that STEP played any role in Eiland's alleged actions. In fact, they removed Eiland from their premises as soon as they became aware of plaintiff's allegations. As such, plaintiff has failed to raise a question of fact on this issue, and the trial court properly granted summary disposition in defendants' favor.

## C. CLAIMS AGAINST CARTER

Defendants asserted, and the trial court agreed, that Carter was separately entitled to summary disposition because the director of the STEP facility where plaintiff worked stated in an affidavit that it was she, not Carter, who made the decision to suspend plaintiff. However, while the trial court concluded that plaintiff submitted no evidence to contradict this statement, the record shows that both parties submitted evidence that *does*, in fact, contradict the director's affidavit. The written suspension notice STEP issued plaintiff indicates that Carter was the "decision maker" and Carter signed the form in that capacity. This, at a minimum, establishes a question of fact with respect to Carter's role in plaintiff's suspension. Accordingly, she is not entitled to summary disposition with respect to plaintiff's WPA claim.[5]

## IV. CONCLUSION

We reverse the trial court's order granting defendants' motion for summary disposition to the extent it applies to plaintiff's WPA claim and to the extent it concludes that Carter is separately entitled to summary disposition because she was, as a matter of law, not involved in suspending plaintiff. We remand for resolution of the question of fact regarding Carter's involvement in plaintiff's suspension and for entry of an order granting plaintiff summary

---

[5] Carter is, however, entitled to summary disposition on the remaining claims for the reasons set forth in the previous section.

disposition against STEP with respect to her WPA claim.  In all other respects, we affirm.  We do not retain jurisdiction.


/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto
/s/ Thomas C. Cameron