*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANA HILL,

        Plaintiff-Appellant,

and

PRODIGY SPINAL REHABILITATION CENTER
PLLC,

        Intervening Plaintiff,

v

NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY,

        Defendant,

and

JAROME DOCKERY,

        Defendant-Appellee.

UNPUBLISHED
May 30, 2024

No. 365691
Wayne Circuit Court
LC No. 21-011898-NI

Before: GARRETT, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

        To support recovery in a third-party automobile-negligence action, a plaintiff must demonstrate an objectively manifested impairment of an important body function as a result of an underlying motor vehicle accident. Plaintiff, Dana Hill, created a triable fact question based on record evidence that the motor vehicle accident with defendant, Jarome Dockery, exacerbated preexisting conditions and caused additional injuries impacting her general ability to lead her normal life. Such factual questions cannot be summarily resolved as a matter of law and the trial

-1-

court improperly granted summary disposition in Dockery's favor. We vacate and remand for further proceedings.[1]

## I. BACKGROUND

In December 2020, Hill was a passenger in a motor vehicle parked on a residential street. Hill was not wearing a seatbelt and was leaning forward to gather her belongings before exiting the vehicle. Dockery drove by, veered to the right, and struck the vehicle in the rear driver's side, causing Hill to hit her face on the dashboard and sustain injuries.

Before the accident, in 2019, Hill had a pinched nerve and arthritis in her neck, for which she received a CT scan, medication, and physical therapy. Her CT scan revealed a variety of spinal issues at the C5-C6 and C6-C7 vertebrae. Hill's neck pain, however, resolved before the 2020 accident. The day after the accident, Hill went to Henry Ford Health System's (HFHS's) Emergency Department complaining of pain in her neck, shoulders, back, and arm, and nerve pain in her hands. Over the next few months, Hill treated at Prodigy Spinal Rehabilitation Center, PLLC (Prodigy) and the Michigan Head & Spine Institute (MHSI). A post-accident MRI showed new injuries at the C3-C4 vertebrae and worsening spinal conditions at the C5-C6 and C6-C7 vertebrae. As a result of her injuries, Hill could not perform her job as a home health aide to her uncle or drive, and needed assistance managing her personal hygiene and household chores.

Hill filed suit against Dockery, claiming that Dockery's negligent operation of his motor vehicle caused her severe pain and suffering and aggravated any preexisting conditions she had. Dockery answered Hill's complaint, denying her allegations as untrue and asserting various affirmative defenses. Relevant here, Dockery asserted that Hill's claims were barred under MCL 500.3135 and *McCormick v Carrier*, 487 Mich 180, 189; 795 NW2d 517 (2010), "for the reason that [Hill's] injuries do not amount to a serious impairment of body function and/or a permanent serious disfigurement . . . ."

After months of discovery, Dockery moved for summary disposition under MCR 2.116(C)(10), contending that Hill failed to demonstrate that she sustained an objectively manifested impairment as a result of the accident because her alleged injuries were related to pre-accident health issues, there was no change in her condition after the accident, and her claims were based on subjective complaints rather than objective evidence. Dockery also argued that Hill failed to show that her impairment affected her ability to lead her normal life. In support of his motion, Dockery included reports from two "independent" medical examinations (IMEs).[2] The reports

---

[1] The trial court also summarily dismissed Hill's and the intervening plaintiff's claims against defendant, Nationwide Mutual Fire Insurance Company. The parties stipulated to the dismissal of Hill's appellate claims against this defendant. *Hill v Nationwide Mut Fire Ins Co*, unpublished order of the Court of Appeals, entered March 19, 2024 (Docket No. 365691).

[2] Although IMEs are typically referred to as "independent medical examinations," the "independence" of these examinations is "questionable" since "an IME involves obtaining a second opinion from a doctor who is entirely selected and paid for by an insurance company."

indicated that despite her complaints, Hill overall demonstrated normal levels of functioning, although one report conceded Hill had limited motion on the right side of her neck and tightness in her neck muscles.

Hill responded that she had demonstrated an objectively manifested impairment because her doctors reported she "suffered injuries and that those injuries impacted her ability to function." Hill also argued that her impairment affected her ability to lead a normal life because after the accident she could not care for her uncle, attend to her hygienic needs, or perform household chores. Although she had been able to "resume some activity after two to three months," Hill argued that there was no temporal requirement for how long an impairment must last to justify recovery. Dockery retorted that Hill failed to offer sufficient evidence showing her injuries were caused by the accident.

The trial court granted Dockery's motion, stating: "There is nothing in the 2021 MRI report to indicate that these findings are traumatic in origin, absent some medical testimony or documentation relating the findings to the January 2021 MRI to the accident, [Hill] does not meet the threshold requirement of an objectively manifested impairment." This appeal followed.

## II. SUMMARY DISPOSITION

Hill argues that the trial court erred by granting summary disposition to Dockery because there was a question of fact whether the accident caused Hill to suffer a serious impairment of an important body function affecting her general ability to lead her normal life.

## A. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). That means we review the issue independently, with no required deference to the trial court. *Millar v Constr Code Auth*, 501 Mich 233, 237; 912 NW 2d 521 (2018). When deciding a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *El-Khalil*, 504 Mich at 160. If the moving party properly asserts and supports its motion for summary disposition, the "burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The trial court must only grant summary disposition under MCR 2.116(C)(10) "when there is no genuine issue of material fact," meaning that "the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (cleaned up). We also review "de novo the interpretation and application of a statute as a question of law. If the language of a statute is clear, no further analysis is necessary or allowed." *Eggleston v Bio-Med Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

---

*Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 364 n 3; 986 NW2d 451 (2022). It is more accurate to refer to such an examination as an "insurance medical examination."

## B. THIRD-PARTY NEGLIGENCE PRINCIPLES

Tort liability is limited under the Michigan no-fault act. *McCormick*, 487 Mich at 189. A "person remains subject to tort liability for noneconomic loss *caused by* his or her ownership, maintenance, or *use of a motor vehicle* only if the injured person has suffered death, *serious impairment of body function*, or permanent serious disfigurement." MCL 500.3135(1) (emphasis added). Whether Hill incurred a serious impairment of body function is a question of law to be decided by the trial court only if "[t]here is no factual dispute concerning the nature and extent of" her injuries, or "[t]here is a factual dispute concerning the nature and extent of [her] injuries, but the dispute is not material to the determination whether [she] has suffered a serious impairment of body function. . . ." MCL 500.3135(2)(a)(*i*); see also *Chouman v Home Owners Ins Co*, 293 Mich App 434, 444; 810 NW2d 88 (2011). To prove a serious impairment of body function, Hill must show she has: "(1) an objectively manifested impairment (2) of an important body function that (3) affects [her] general ability to lead . . . her normal life." *McCormick*, 487 Mich at 195. On appeal, neither party challenges the second prong of the *McCormick* test. We will address only the first and third prongs and the issue of causation.

## C. ANALYSIS

Hill first argues that summary disposition was improper because there was a genuine issue of material fact whether she suffered an objectively manifested impairment of an important body function.

As contemplated by MCL 500.3135(5)(a), an objectively manifested impairment "is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *McCormick*, 487 Mich at 196. This inquiry focuses on "whether the *impairment* is objectively manifested, not the *injury* or its symptoms." *Id*. at 197. An injury is the actual damage caused to the individual, whereas an impairment is how an injury affects a particular body function. *Id*. "Although mere subjective complaints of pain and suffering alone are insufficient to show impairment, evidence of a physical basis for that pain and suffering may be introduced to show that the impairment is objectively manifested." *Patrick v Turkelson*, 322 Mich App 595, 607; 913 NW2d 369 (2018). Generally, medical testimony is required to make this showing. *Id*.

Immediately after the accident, Hill told police officers that as a result of hitting her face on the dashboard, she had pain in her neck. The next day, Hill went to HFHS complaining of pain in her neck, shoulders, back, and arms, as well as nerve pain in her hands. HFHS medical notes indicate that although there were no "significant traumatic findings," Hill had tightness in her "left trapezius muscle." Providers at HFHS gave Hill an injection to treat her pain. The day after Hill was treated at HFHS, she was seen at Prodigy and continued treatment there two to three days per week for about six months to address issues with her neck, shoulders, back, arms, and hands. Hill was also seen at MHSI for treatment to address these same issues. During her treatment at MHSI, Hill generally had normal symptoms, however, one of her providers noted that she exhibited sensory deficits at the C6-C7 vertebrae and Hoffmann's symptoms on her left side. Similarly, the IMEs generally indicated that Hill did not exhibit any pain-related symptoms. As noted, one IME report conceded that Hill had limited range of motion on the right side of her neck and tightness in her cervical paraspinals.

Considering this evidence in the light most favorable to Hill, she has created a question of fact whether she sustained an objectively manifested impairment. Hill's post-accident MRI shows that she sustained injuries to her C3-C4, C5-C6, and C6-C7 vertebrae. As a result of these injuries, doctors observed that Hill had muscle tightness, sensory deficits, neurological symptoms, and decreased range of motion in the right side of her neck. Although Hill's medical records and the IME reports also indicate that she did not exhibit trauma or pain-related symptoms, this evidence does not negate the observations of several other medical providers that Hill's injuries affected the function of her neck, back, shoulders, and hands. As such, there remains a question of fact whether Hill suffered an objectively manifested impairment.

Hill also argues that summary disposition was improper because she created a triable question of fact regarding causation.

"Proximate causation is a required element of a negligence claim. Causation is an issue that is typically reserved for the trier of fact unless there is no dispute of material fact." *Patrick*, 322 Mich App at 616 (cleaned up). "In a negligence action, a plaintiff must establish both factual causation, i.e., the defendant's conduct in fact caused harm to the plaintiff, and legal causation, i.e., the harm caused to the plaintiff was the general kind of harm the defendant negligently risked." *Ray v Swager*, 501 Mich 52, 64; 903 NW2d 366 (2017) (cleaned up). "Establishing cause in fact requires the plaintiff to present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Patrick*, 322 Mich App at 617 (cleaned up). Although speculation alone cannot establish causation, "a plaintiff's evidence of causation is sufficient at the summary disposition stage to create a question of fact for the jury if it establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support." *Id*. (cleaned up).

When granting Dockery's motion for summary disposition, the trial court relied on this Court's holding in *Whitaker v Rigel*, unpublished per curiam opinion of the Court of Appeals, issued June 17, 2021 (Docket No. 354842), pp 3-5.[3] In *Whitaker*, the plaintiff was injured in a car accident and diagnosed with an " 'acute of the neck muscle' and '[l]umbar stenosis.' " *Id*. at 1-2. The plaintiff, however, had an "extensive history of back, hip, leg, and knee issues, along with other medical conditions which prevented plaintiff from working (since 2014) and participating in recreational as well as sexual activities," and also had a "history of chronic degenerative changes in her spine." *Id*. at 2. "[T]here were no objective findings that causally linked plaintiff's pain complaints to the accident; rather, her symptoms arose from preexisting degenerative osteoarthritic conditions of her spine and knees." *Id*. This Court affirmed the trial court's order granting summary disposition to the defendant, finding that although the plaintiff's post-accident MRI showed damage to her spine, because she had a degenerative back condition and provided no "medical testimony attributing the worsening of [her] allegedly 'new' back conditions to the . . . accident," the plaintiff failed to create a question of fact whether the accident caused her to suffer an objectively manifested impairment. *Id*. at 4.

---

[3] Although unpublished opinions are not binding, we may consider them for their persuasive value. MCR 7.215(C)(1).

By contrast, in *Patrick*, 322 Mich App at 615-621, this Court found that the plaintiff adequately established causation. In *Patrick*, the plaintiff was in a car accident in which the airbag deployed, hitting her on the side of her face, her left ear, and the top of her head. *Id*. at 599. The plaintiff did not have a history of hearing loss before the accident, but at the scene and in the months after the accident, she reported having trouble hearing and ringing in her left ear. *Id*. at 599-602. The plaintiff's doctor noted that there was no pre-accident audiogram measuring her hearing capabilities and it was possible that her hearing could have deteriorated with age. *Id*. at 601-602. The doctor, however, testified that based on the plaintiff's audiogram results and change in her hearing after the accident, her hearing loss was likely caused by her exposure to the sound of the air bags deploying. *Id*. at 620. This Court reversed the trial court's order granting summary disposition to the defendant, finding that "although it is possible that [the plaintiff's] hearing loss was due to aging, plaintiffs presented evidence demonstrating a logical sequence of cause and effect sufficient to create a genuine issue of material fact." *Id*.

In this case, Hill had a CT scan in 2019, related to issues with a pinched nerve and arthritis in her neck. The CT scan revealed various mild issues at the C5-C6 and C6-C7 vertebrae. Hill briefly took medication and participated in physical therapy for neck pain before stopping treatment when her symptoms subsided. Other than neck pain, Hill denied any pre-accident pain in her back, arms, shoulders, and hands, and did not report any prior injuries to these parts of her body. And, unlike the plaintiff in *Whitaker*, there was no evidence that Hill had an extensive history of a degenerative condition.

During the accident, Hill hit her face on the dashboard and immediately told the responding officers that she was having neck pain. When Hill went to HFHS the next day, she complained of pain in her neck, shoulders, back, arms, and hands. Over the next few months, Hill consistently told several different providers that she was experiencing pain in her neck, shoulders, back, arms, and hands. During this time, Hill received an MRI revealing additional and worsening damage to her back. Additional vertebrae were affected and new forms of injury and damage were documented.

Reading this evidence together, Hill has established "a logical sequence of cause and effect sufficient to create a genuine issue of material fact." *Patrick*, 322 Mich App at 620. Before the accident, Hill reported having issues only with her neck, and denied having any pain in other parts of her body. Similar to the plaintiff in *Patrick*, Hill reported pain symptoms in her back, arms, shoulders, and hands that did not exist before the accident. Although Hill's pre-accident CT scan and post-accident MRI showed similar injuries to the C5-C6 and C6-C7 region of her back, the post-accident MRI showed new damage to the C3-C4 vertebrae and worsening damage to her C5-C6 and C6-C7 vertebrae. The physical manifestations of Hill's injuries were observed by several doctors, who reported that she had tightness in her left trapezius muscle, limited range of motion on the right side of her neck, tightness in her cervical paraspinals, sensory deficits at the C6-C7 vertebrae, and Hoffmann's symptoms. Although one IME reported it was possible that the disc herniations shown in Hill's post-accident MRI could have been caused by a prior injury, this theory does not negate the possibility that Hill's symptoms may have been caused by the accident, especially where the evidence shows that many of Hill's symptoms only appeared *after* the accident. Hill presented sufficient evidence to create a question of fact as to causation.

Finally, Hill argues that Dockery was not entitled to summary disposition because her impairment affected her ability to lead her normal life.

An impairment to an important body function affects a person's general ability to lead a normal life if it "has had an influence on some of the person's capacity to live in his or her normal manner of living." MCL 500.3135(5)(c). As contemplated by the statute, this is a subjective inquiry that must be decided on a case-by-case basis. *McCormick*, 487 Mich at 202. The focus of the inquiry is not on whether a person's "normal manner of living itself has been affected." *Id*. Instead, the question is whether "the person's *ability* to live in . . . her normal manner of living has been affected[.]" *Id*. The statute does not require the person's ability to lead a normal life to have been destroyed or impose a temporal requirement for how long an impairment must last. *Id*. at 202-203.

Hill testified that for about two months after the accident she could not perform her job as a home health aide for her uncle. She also claimed that she could not drive for three to four months after the accident and needed assistance with taking care of her personal hygiene and household chores. It is not outcome-determinative that the impact from Hill's impairment lasted only a few months. MCL 500.3135(5)(c). Further, because "a person's ability to lead . . . her general life does not have to be destroyed in order to constitute a threshold injury," it is inconsequential that Hill has since returned to her normal manner of living. *Piccione v Gillette*, 327 Mich App 16, 22-23; 932 NW2d 197 (2019). It is enough for the evidence to show that her impairment had a short-term effect on her "ability to live in . . . her normal manner of living." *McCormick*, 487 Mich at 202. Viewing the evidence in the light most favorable to Hill, there is sufficient evidence from which a rational trier of fact could conclude that her impairment affected her general ability to lead her normal life.

Ultimately, Hill presented sufficient evidence to create triable questions of material fact on each prong of the *McCormick* test and regarding causation. This precluded summary resolution of Hill's claims. The trial court erred in dismissing Hill's complaint.

We vacate and remand to the trial court for further proceedings. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Deborah A. Servitto
/s/ James Robert Redford

-7-