Michigan Supreme Court
Lansing, Michigan

# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Kathryn L. Loomis

## LAKESHORE GROUP v DEPARTMENT OF ENVIRONMENTAL QUALITY

Docket Nos. 159524 and 159525. Argued on application for leave to appeal October 7, 2020. Decided May 20, 2021.

Lakeshore Camping, Gary Medler, and Shorewood Association petitioned for contested case hearings before an administrative-law judge (ALJ), challenging permits and a special exception granted by the Michigan Department of Environmental Quality (now the Michigan Department of Environment, Great Lakes, and Energy (EGLE)) to Dune Ridge SA LP. The petitions were consolidated, but Medler's and Shorewood's petitions were subsequently dismissed pursuant to a settlement agreement. Lakeshore Group, Jane Underwood, Charles Zolper, Lucie Hoyt, William Reininga, Kenneth Altman, and others moved to intervene. The ALJ denied intervention to some of these parties and ultimately dismissed the matter, concluding that the remaining petitioners and intervenors lacked standing. In February 2014, Dune Ridge, a real estate developer, had purchased a 130-acre plot of land along the shore of Lake Michigan. The property was located in a critical dune area and therefore was subject to certain regulations under the sand dunes protection and management act (SDPMA), MCL 324.35301 *et seq*. EGLE issued the requisite permits and special exceptions needed for development of the property to Dune Ridge, and in October 2014, Lakeshore Camping, Medler, and Shorewood filed their petitions under MCL 324.35305(1), which allows certain aggrieved parties to challenge the grant or denial of a permit or special exception and to request a contested case hearing on the permitting decision. Around September 2015, Underwood and Zolper moved to intervene in the case as aggrieved adjacent property owners. The ALJ also allowed Lakeshore Group, an unincorporated nonprofit association, to intervene after determining that it had "representational standing" through Zolper, one of its members. Lakeshore Camping and other petitioners were eventually dismissed from the case, leaving Underwood, Zolper, and Lakeshore Group as the sole remaining petitioners. In December 2015, Dune Ridge conveyed about 20 acres of its property that was immediately adjacent to Underwood's property to a nature conservancy, the Oval Beach Preservation Society. Dune Ridge then moved for partial summary disposition, seeking to dismiss Underwood because she no longer owned property immediately adjacent to Dune Ridge's property. In July 2016, the ALJ granted the motion. In September 2016, Dune Ridge sold 15 acres of its property, including the land immediately adjacent to Zolper's property, to Vine Street Cottages, LLC. Dune Ridge then moved for summary disposition as to Zolper, and the ALJ dismissed Zolper and Lakeshore Group, finding that they no longer had standing because Zolper was no longer an immediately adjacent property owner. Underwood, Zolper, Lakeshore Group, and others appealed the decision

of the ALJ in the Ingham Circuit Court. On appeal in the circuit court, Rosemarie E. Aquilina, J., reversed the ALJ's orders dismissing Underwood, Zolper, and Lakeshore Group, concluding that the ALJ made an error of law when he determined that petitioners "lost" standing when Dune Ridge conveyed to others the portions of its property that were adjacent to the land owned by Underwood and Zolper. EGLE appealed, and the Court of Appeals, SAWYER, P.J., and CAVANAGH and K. F. KELLY, JJ., reversed the circuit court's decision in an unpublished per curiam opinion, concluding that although Underwood and Zolper were immediately adjacent property owners when they intervened in the case, they lost this status when Dune Ridge conveyed its property to Oval Beach and Vine Street and consequently they had lost their rights to challenge the permitting decision. Underwood, Zolper, and others sought leave to appeal in the Supreme Court, which ordered and heard oral argument on whether Underwood and Zolper satisfied the statutory standard for standing under MCL 324.35305(1) notwithstanding Dune Ridge's land sales. 505 Mich 875 (2019).

In an opinion by Chief Justice MCCORMACK, joined by Justices BERNSTEIN, CLEMENT, and CAVANAGH, the Supreme Court *held*:

MCL 324.35305(1) balances the need to preserve critical dune areas with the benefits of economic development and human uses of the dunes by allowing two specified groups to request a contested hearing when a permit is issued to develop land on critical dune areas: (1) aggrieved applicants for a permit or special exception and (2) aggrieved owners of the property immediately adjacent to the proposed use. Although there is no dispute that Underwood and Zolper had petition rights under MCL 324.35305(1) when they moved to intervene, the question was whether the subsequent sale by Dune Ridge of slivers of its property extinguished those petition rights. The statute does not provide that a party who has exercised its petition rights may later be divested of those rights. MCL 324.35305(1) outlines a two-step process: an aggrieved permit applicant or immediately adjacent land owner may request a formal hearing, and once an eligible party requests a hearing, the hearing shall be conducted by the department as a contested case hearing under the Administrative Procedures Act, MCL 24.201 *et seq*. Although the parties disputed whether the statute's use of the mandatory term "shall" requires EGLE to hold a hearing or whether it merely mandates how a hearing would take place, this dispute missed the larger point: MCL 324.35305(1) does not include any intermediary step between an eligible party's request and the hearing. In other words, no statutory language empowers EGLE to deny a hearing to a petitioner who qualified as an eligible party under the statute when the hearing was requested and who continues to desire a hearing. Therefore, under the statute, specific aggrieved parties may file a petition and then the department must hold a contested case hearing in conformity with the Administrative Procedures Act. The Court of Appeals erred by holding that Underwood and Zolper lost their petition rights under the statute when Dune Ridge sold parcels of its land because they no longer fit the statutory criteria laid out in MCL 324.35305(1). The statute does not allow for forced forfeiture. The requirements that MCL 324.35305(1) imposes on a petitioner are threshold requirements for requesting a hearing, and there is no basis for imposing an additional requirement that a petitioner must maintain their original status throughout the proceedings.

Reversed.

Justice ZAHRA, dissenting, noted that before the 2012 amendment of MCL 324.35305(1), the statute provided that anyone aggrieved by a decision of the department could request a formal

hearing. Following the amendment, however, only an applicant for a permit or a special exception or the owner of the property immediately adjacent to the proposed use has the right to request a formal hearing if they are aggrieved by a decision of the department. Justice ZAHRA opined that under the amended language, petitioners did not have a statutory right to a formal hearing because although when they petitioned for a hearing at least one of the petitioners owned property immediately adjacent to the property owned by Dune Ridge, none of them owned property immediately adjacent to the *proposed use* by Dune Ridge. MCL 324.35305(1) does not provide the owner of the immediately adjacent property the right to a contested case, but only the owner of the property immediately adjacent to the proposed use. Because the SDPMA does not suggest that the proposed use extends to the entire parcel of property in which the use is sought, and all of the permits at issue concerned proposed uses within the interior of the property, none of the proposed uses was immediately adjacent to petitioners' properties. Justice ZAHRA also disagreed that EGLE was obligated under the statute to hold a hearing upon request by an eligible party. Rather, the lack of an intermediary step in the statute between a party's request and the hearing should not be filled by inappropriately inserting a requirement that EGLE must hold a hearing upon a party's request. Discretion is inherent in the act of considering a request, and the majority opinion improperly removed discretion from the department to grant or deny a request for a hearing.

Justice VIVIANO, dissenting, agreed with Justice ZAHRA that petitioners had failed to establish that they had the right to a formal hearing under MCL 324.35305(1) because their property did not have a common border directly connected with the proposed use. However, Justice VIVIANO concluded that it was not necessary to reach the issue of whether EGLE otherwise has discretion under the statute to grant or deny a hearing to an aggrieved party.

Justice WELCH did not participate in the disposition of this case because the Court considered it before she assumed office.

# OPINION

Chief Justice:
  Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED May 20, 2021

S T A T E   O F   M I C H I G A N

SUPREME COURT

LAKESHORE GROUP, CHARLES
ZOLPER, JANE UNDERWOOD, LUCIE
HOYT, and WILLIAM REININGA,

          Petitioners-Appellants,

and

KENNETH ALTMAN, DAWN
SCHUMANN, GEORGE SCHUMANN,
MARJORIE SCHUHAM and
LAKESHORE CAMPING,

          Intervenors-Appellants,

v                                   Nos. 159524-5

DEPARTMENT OF ENVIRONMENTAL
QUALITY and DUNE RIDGE SA LP,

          Respondents-Appellees.

BEFORE THE ENTIRE BENCH (except WELCH, J.)

MCCORMACK, C.J.

Under the sand dunes protection and management act (SDPMA), MCL 324.35301 *et seq.*,[1] when the government grants a development permit or special exception for a protected sand dune area, aggrieved owners of land immediately adjacent to the proposed use may request a contested case hearing to challenge the permitting decision. The petitioners Charles Zolper and Jane Underwood were aggrieved owners of property adjacent to the defendant Dune Ridge development project when they requested such a hearing—that is, they were eligible for a hearing. But before the hearing was conducted, Dune Ridge sold a strip of land between the proposed development and each petitioner's property, making them no longer adjacent property owners.

We must now determine whether these petitioners lost their eligibility for a contested hearing after properly requesting it. We answer no: Because the statute provides no means to deprive an eligible petitioner of a contested hearing, we hold that the petitioners are entitled to a contested case hearing. We reverse the judgment of the Court of Appeals and remand to the administrative tribunal to conduct a formal contested case hearing.

## I. FACTS AND PROCEDURAL HISTORY

In February 2014, real estate developer Dune Ridge purchased a 130-acre plot of land in Saugatuck, Michigan. The property, located along the shore of Lake Michigan, had been developed and used by a church camp for approximately 100 years. Dune Ridge

---

[1] The SDPMA is Part 353 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq*.

2

proposed to transform the area by tearing down old campground structures, widening and paving roads, constructing more than 20 luxury homes with paved driveways and septic-disposal and drain-field systems, and building a marina, along with other permanent site alterations.

Dune Ridge's newly acquired property was located in a state-designated critical dune area,[2] which meant that Dune Ridge needed to secure permits from the local unit of government or the Department of Environment, Great Lakes, and Energy (EGLE)[3] in order to proceed with its proposed development project. MCL 324.35304(1)(a). Dune Ridge complied with that requirement, and in August 2014, EGLE approved and issued Dune Ridge's first set of requested permits and special exceptions. Not everyone was pleased about this development, and in October 2014, Lakeshore Camping, Gary Medler, and Shorewood Association filed three separate petitions requesting contested case hearings, which were consolidated.

They requested these hearings pursuant to § 35305(1) of the SDPMA, which allows certain aggrieved parties to challenge the grant (or denial) of a permit or special exception. That statute allows applicants for permits or special exceptions, as well as aggrieved

_____

[2] There are approximately 70,000 acres of protected critical dune areas in Michigan extending along much of Lake Michigan's shoreline and the shores of Lake Superior. A map of the critical dune areas is available online. See Michigan Department of Environment, Great Lakes, and Energy, *Atlas of Critical Dunes – Township Maps of Critical Dune Areas*, available at <https://www.michigan.gov/egle/0,9429,7-135-3311_4114-70207--,00.html> (accessed November 12, 2020) [https://perma.cc/E4XQ-LWSN].

[3] The Department is listed as a defendant, but under its former name, the Department of Environmental Quality. See Executive Order No. 2019-02.

3

"owner[s] of the property immediately adjacent to the proposed use" to request a formal hearing on a permitting decision. MCL 324.35305(1). The hearings are conducted as a contested case, which the Administrative Procedures Act[4] defines as "a proceeding . . . in which a determination of the legal rights, duties, or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing." MCL 24.203(3).

By mid-September 2015, nearly a year after the parties had filed their initial requests for contested case hearings, the consolidated case was still pending. But it was no longer much of a consolidated case: Medler and Shorewood Association had been dismissed with prejudice under the terms of settlement agreements they entered into with Dune Ridge. This left only Lakeshore Camping.

It was around this time that appellants Underwood and Zolper, alongside six of their neighbors and Lakeshore Group, moved to intervene. See Mich Admin Code, R 792.10306. Both Underwood and Zolper owned property bordering Dune Ridge's 130-acre development property and claimed that they were aggrieved by the natural destruction posed by Dune Ridge's development project. EGLE did not object to the motion to intervene. Dune Ridge did, arguing that the petitioners did not live "immediately adjacent" to the proposed use, because the proposed development was to take place in the *interior* of the Dune Ridge property. The administrative law judge (ALJ) dismissed this argument, finding that Dune Ridge's construction of § 35305(1) would impermissibly narrow its application to circumstances where the proposed development takes place on the border of

---

[4] MCL 24.201 *et seq*.

4

parcels owned by the permit applicant. The ALJ allowed Underwood, Zolper, and two of their neighbors who also lived immediately adjacent to the proposed development to intervene. The ALJ denied the motion as to the other would-be intervenors who lived near, but not immediately adjacent to, the Dune Ridge property. For reasons not relevant to this appeal, Underwood and Zolper soon found themselves as the only remaining individual petitioners.[5]

On December 14, 2015, Dune Ridge conveyed 20.6 acres of its property to the Oval Beach Preservation Society, a nature conservancy organization, to preserve the property in its undeveloped state. The location of the conveyed property was significant: It was immediately adjacent to Underwood's property, effectively creating an Oval Beach Preservation Society-owned buffer between the properties owned by Underwood and Dune Ridge. Shortly thereafter, Dune Ridge filed a motion for partial summary disposition to dismiss Underwood from the contested case, arguing that Underwood no longer owned property immediately adjacent to Dune Ridge's property. The ALJ granted the motion in a July 7, 2016 order.

---

[5] Lakeshore Camping, one of the original petitioners, was dismissed because it did not own property immediately adjacent to the development. The other two neighbors were also dismissed because while they lived on property adjacent to the development, they did not *own* the property, which belonged to Shorewood Association. Lakeshore Group, an unincorporated nonprofit association, was initially denied the right to intervene. Later in the proceedings, however, the ALJ determined that the group had "representational standing" because Zolper was one of its members. See *Trout Unlimited, Muskegon White River Chapter v White Cloud*, 195 Mich App 343, 348; 489 NW2d 188 (1992) ("A nonprofit corporation has standing to advocate interests of its members where the members themselves have a sufficient stake or have sufficiently adverse and real interests in the matter being litigated.").

On September 30, 2016, Dune Ridge sold 15 acres of its property to an organization called Vine Street Cottages, LLC. The parcel included the land immediately adjacent to the land owned by Zolper, and Dune Ridge again moved for summary disposition. The ALJ found that Zolper, like Underwood before him, was no longer able to contest Dune Ridge's proposed development. Lakeshore Group, which had enjoyed representational standing through Zolper, was also dismissed.

On appeal, the Ingham Circuit Court reversed the ALJ's orders. Applying the principle of legal standing to this administrative-hearing process, the circuit court held that while jurisdictional challenges may be raised at any time, a court determines standing when the suit is filed. Therefore, the circuit court concluded, the ALJ committed a substantial and material error of law when he ruled that the petitioners "lost" standing following Dune Ridge's conveyance of portions of its property to the Oval Beach Preservation Society and Vine Street Cottages, LLC.

EGLE appealed. In a March 21, 2019 per curiam opinion, the Court of Appeals reversed the circuit court and held that while Zolper and Underwood were "immediately adjacent" property owners when they intervened in the case, they later lost their right to challenge the permitting decision. *Lakeshore Group v Dep't of Environmental Quality*, unpublished per curiam opinion of the Court of Appeals, issued March 21, 2019 (Docket Nos. 340623 and 340647), pp 11-12. The panel, like the circuit court, applied the justiciability doctrine of standing to the statutory hearing process but reached the opposite conclusion. Because standing is jurisdictional, the panel reasoned, a party's "lack of standing may be raised at any time." *Id*. at 10. As a result, Zolper and Underwood had lost the right to a contested case hearing because they had lost their status as owners of

6

" 'the property immediately adjacent to the proposed use.' " *Id*. at 11, quoting MCL 324.35305(1).

The petitioners appealed, arguing that the Court of Appeals erred by reversing the circuit court. We directed briefing and oral argument on the following question:

> [W]hether appellants Jane Underwood and Charles Zolper, as "owner[s] of [] property immediately adjacent to the proposed use" at the time of their intervention in these contested cases, satisfy the statutory standard for standing under MCL 324.35305(1), notwithstanding the developer's subsequent sales of land located between each appellant's respective property and the property being developed. [*Lakeshore Group v Dep't of Environmental Quality*, 505 Mich 875 (2019) (second and third alterations in original).]

## II. STANDARD OF REVIEW

This case involves an issue of statutory interpretation, which we review de novo. *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013).[6] This means that we review the issue independently, without any required deference to the lower court. *Millar v Constr Code Auth*, 501 Mich 233, 237; 912 NW2d 521 (2018).

## III. ANALYSIS

The SDPMA built a regulatory infrastructure around the state's critical dune areas— "unique, irreplaceable, and fragile resource[s] that provide significant recreational, economic, scientific, geological, scenic, botanical, educational, agricultural, and ecological benefits." MCL 324.35302(a). The SDPMA balances the need to preserve the dunes with "the benefits of economic development and multiple human uses of the critical dunes." MCL 324.35302(b). The statutory provision at issue, § 35305(1), reflects this goal:

---

[6] Vacated in part on other grounds 497 Mich 896 (2014).

7

> If an applicant for a permit or a special exception or the owner of the property immediately adjacent to the proposed use is aggrieved by a decision of the department in regard to the issuance or denial of a permit or special exception under this part, the applicant or owner may request a formal hearing on the matter involved. The hearing shall be conducted by the department as a contested case hearing in the manner provided for in the administrative procedures act of 1969, 1969 PA 306, MCL 24.201 to 24.328.

Section 35305(1) limits who can request a contested hearing to two categories of potential petitioners: "applicant[s] for a permit or a special exception" and "owner[s] of the property immediately adjacent to the proposed use . . . aggrieved by a decision of the department."[7]

The question is not whether Underwood and Zolper had § 35305(1) petition rights in September 2015 when they moved to intervene. We agree with the Court of Appeals that they did.[8] See *Lakeshore*, unpub op at 9. The question is rather whether Dune Ridge's subsequent sale of slivers of its property to third parties extinguished Underwood's and Zolper's petition rights.

---

[7] The statute once allowed any "person [who] is aggrieved by a decision of the department" to request a formal hearing, but a 2012 amendment narrowed the language to its present form. Compare MCL 324.35305(1), as enacted by 1995 PA 59, with MCL 324.35305(1), as amended by 2012 PA 297.

[8] The dissent disagrees. It embraces Dune Ridge's view that Underwood and Zolper *never* had a statutory right to challenge EGLE's determination because "proposed use" in MCL 324.35305(1) refers narrowly to only the specific section of the parcel of land being developed. That interpretation—which would allow adjoining property owners to petition a local unit of government for a hearing only when the proposed development takes place on the literal border between the properties—is not a reasonable reading of the statutory language. It would likely insulate all sand dune development from review—how often do people build on the border of their property? It's no wonder that such an interpretation has not been embraced by EGLE or any tribunal. Indeed, Dune Ridge opted not to appeal the ALJ's decision rejecting this interpretation and instead made the property transfers that led us here.

No text in MCL 324.35305 provides that a party that has exercised its petition rights may later be divested of those rights. ALJs derive their authority from the Legislature; they may not exercise powers not expressly granted through statute. See *Soap & Detergent Ass'n v Natural Resources Comm*, 415 Mich 728, 736; 330 NW2d 346 (1982) ("It is beyond debate that the sole source of an agency's power is the statute creating it."); *Coffman v State Bd of Examiners in Optometry*, 331 Mich 582, 590; 50 NW2d 322 (1951) ("Administrative boards, commissions, and officers have no common-law powers. Their powers are limited by the statutes creating them to those conferred expressly or by necessary or fair implication."), quoting 42 Am Jur, § 26, p 316. The statute at issue here outlines a straightforward two-step (and only two-step) process: an aggrieved permit applicant or immediately adjacent land owner "may request a formal hearing." MCL 324.35305(1). If an eligible party requests a hearing, "[t]he hearing shall be conducted by the department as a contested case hearing in the manner provided for in the administrative procedures act of 1969." *Id.* The term "shall" indicates that conduct is mandatory. *Walters v Nadell*, 481 Mich 377, 383; 751 NW2d 431 (2008).

The parties dispute whether "shall" imposes an obligation on EGLE to hold a hearing or whether it merely mandates how a hearing would take place (i.e., in conformity with the Administrative Procedures Act). The dispute over this single word misses the larger point: MCL 324.35305(1) includes no intermediary step between the request and the hearing. No statutory language empowers EGLE to deny a hearing to a petitioner who satisfied the statute's requirement when the hearing was requested and who continues to desire a hearing. The statutory algorithm is straightforward: specific aggrieved parties may file a petition and then the department must hold a contested case hearing in conformity

9

with the Administrative Procedures Act. Cf. *Brandon Sch Dist v Mich Ed Special Servs Ass'n*, 191 Mich App 257, 258, 264-265; 477 NW2d 138 (1991) (affirming an Insurance Commissioner's denial of a petition for a contested case hearing because the relevant statute's statement that the Commissioner "may" hold a hearing was not "a mandatory decree," meaning the denial was within the Commissioner's discretion). If an eligible party requests a hearing, EGLE must hold one.[9]

The statute provides no off-ramp, and the Court of Appeals erred by creating one. The panel concluded that Dune Ridge's sale of parcels of its land meant that Zolper and Underwood "no longer fit the statutory criteria" laid out in MCL 324.35305(1). *Lakeshore*, unpub op at 12. In other words, the Court of Appeals understood Dune Ridge's unilateral actions, undertaken after Zolper and Underwood properly intervened but before a contested case hearing took place, to have forfeited Zolper's and Underwood's rights to challenge the permitting decision. See *id*.

But § 35305(1) does not allow for forced forfeiture. The requirements that the statute imposes on the petitioners—that they be either aggrieved permit applicants or

---

[9] The dissent believes that the agency enjoys the discretion to deny a hearing even to aggrieved owners of immediately adjacent property. But the statute's text is plain: the discretion rests with aggrieved owners of immediately adjacent property, who *may* request a hearing, not the department, which *must* comply with the statute's requirement that "[t]he hearing shall be conducted . . . as a contested case hearing in the manner provided for in the administrative procedures act . . . ." MCL 324.35305(1). The dissent's concern about the potential for gamesmanship by adjacent property owners who sell their property is hard to follow. A no-longer-adjacent property owner who wants to participate in a contested hearing requested when she was an adjacent property owner is an unlikely hypothetical. But if it presents itself, this hypothetical claimant will have an uphill battle establishing that she is aggrieved by the proposed development.

10

aggrieved immediately adjacent land owners—are threshold requirements for requesting a hearing. There is no basis for imposing an additional requirement that a petitioner maintain that status throughout the proceedings.[10]

We therefore reverse the Court of Appeals. The Legislature enacted the SDPMA to balance the preservation of critical dune areas with the need for economic development. To achieve that balance, the Legislature determined that only specific people may request an administrative contested case hearing. But for those limited qualifying parties, the hearing must occur. The statute simply does not create any process for divesting a qualified petitioner of their right to a hearing. Nor does it import principles of legal standing or

---

[10] Though the ALJ and the courts below have largely addressed this dispute under the justiciability doctrines of standing and mootness, the language of MCL 324.35305(1) is dispositive. We also question, though reserve for another day, whether nonjudicial officers like ALJs should invoke such traditional justiciability doctrines when a statute does not. These doctrines narrow the types of cases that *courts* may decide. Underpinning these doctrines is the idea that the scope of *judicial power* is limited and that certain disputes may be inappropriate for judicial adjudication. See *Mich Chiropractic Council v Comm'r of the Office of Fin & Ins Servs*, 475 Mich 363, 372; 716 NW2d 561 (2006), overruled on other grounds by *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 352-353, 371 n 18, 372; 792 NW2d 686 (2010). Justiciability doctrines are guardrails for the judiciary, preventing courts from encroaching on the other branches and encouraging judicial restraint. Administrative agencies like EGLE do not possess the judicial power. "In other words, administrative agencies are not bound by the same justiciability limitations that affect the authority of the judiciary." *Mich Chiropractic Council*, 475 Mich at 372 n 18. This makes sense in light of the principles that animate justiciability doctrines: a legislatively created hearing process (unlike a proceeding in a Michigan court) need not be concerned about encroaching on the Legislature's power. In the present case, Zolper and Underwood's complaint is that they were unlawfully deprived of a statutorily created contested hearing before a nonjudicial hearing officer, not that they should have access to a hearing in court. The Legislature created this hearing right, and the Legislature's statute governs this dispute. Cf. *Huffman v Indiana Office of Environmental Adjudication*, 811 NE2d 806, 812-813 (Ind, 2004) (finding that an Indiana ALJ should not have invoked the judicial doctrine of standing because "the statute, and only the statute, defines the class of persons who can seek administrative review of agency action").

11

mootness into this specific contested hearing process. Courts can't add requirements to the text of the statute.

This dispute is a simple one. As EGLE admits, the petitioners satisfied this particular statute's strict requirements for requesting a contested hearing when they filed their petitions. The statute requires that they get that hearing and leaves no room for the respondent to forfeit it for them.

## IV. CONCLUSION

When EGLE grants a permit or special exception to allow development in a protected sand dune area, under MCL 324.35305, aggrieved owners of land immediately adjacent to the proposed development have a statutory right to request a contested case hearing. That is precisely what Zolper and Underwood did. The statute then requires EGLE to conduct a contested case hearing pursuant to the Administrative Procedures Act. No hearing took place; instead, years of litigation ensued over whether Dune Ridge's conveyance of land could deprive Zolper and Underwood of their statutory right to a hearing. The text of the statute says no.

Bridget M. McCormack
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

12

S T A T E   O F   M I C H I G A N

SUPREME COURT

LAKESHORE GROUP, CHARLES
ZOLPER, JANE UNDERWOOD, LUCIE
HOYT, and WILLIAM REININGA,

        Petitioners-Appellants,
and

KENNETH ALTMAN, DAWN
SCHUMANN, GEORGE SCHUMANN,
MARJORIE SCHUHAM, and
LAKESHORE CAMPING,

        Intervenors-Appellants,

v                                    Nos. 159524-5

DEPARTMENT OF ENVIRONMENTAL
QUALITY and DUNE RIDGE SA LP,

        Respondents-Appellees.

_____

ZAHRA, J. (*dissenting*).

    I respectfully dissent.  Petitioners were never eligible to request a formal hearing because they have never owned property immediately adjacent to the proposed use.  But even if petitioners had met the statutory requirements when they requested a formal hearing, respondent Department of Environment, Great Lakes, and Energy (EGLE)[1]

---

[1] See note 3 of the majority opinion.

retained implicit discretion under MCL 324.35305(1) to grant or deny petitioners a contested hearing.

I have no quarrel with the "facts and procedural history" of this case as presented in the majority opinion. But I take exception to the majority's terse treatment of respondent Dune Ridge's view that Jane Underwood and Charles Zolper "never had a statutory right to challenge EGLE's determination because 'proposed use' in MCL 324.35305 refers narrowly to only the specific section of the parcel of land being developed . . . ."[2]

The majority acknowledges that the Legislature in 2012 "narrowed the language" of MCL 324.35305(1),[3] but it does not acknowledge the effect of this "narrowing" of language on a person's right to request a formal hearing under the sand dunes protection and management act, MCL 324.35301 *et seq.* (the Act). Formerly, MCL 324.35305(1) provided that anyone "aggrieved by a decision of the department" was permitted to request a formal hearing.[4] This language was revised, however, and under the current version of MCL 324.35305(1), aside from "an applicant for a permit or a special exception," only "the owner of the property immediately adjacent to the proposed use" has the right to request a formal hearing if they are aggrieved by a decision of the department.[5]

The significance of the amendment as applied to this case cannot be ignored. While petitioners would have been able to request a formal hearing under the previous version of

---

[2] *Ante* at 8 n 8 (emphasis omitted).

[3] *Ante* at 8 n 7.

[4] MCL 324.35305(1), as enacted by 1995 PA 59.

[5] MCL 324.35305(1), as amended by 2012 PA 297.

the statute, the plain and clear language of the current version of MCL 324.35305(1) does not provide petitioners a statutory right to request a formal hearing. The majority's opinion does not meaningfully examine the history and language of MCL 324.35305(1) to resolve the threshold question squarely presented: whether petitioners are "the owner[s] of the property immediately adjacent to the proposed use."

There is no dispute that at least one petitioner, at some point, owned the property "immediately adjacent" to the property owned by Dune Ridge. Likewise, there is no dispute that Dune Ridge applied for several permits, as defined by the Act, "for a use within a critical dune area" on its property.[6] The proposal for "use" "means a developmental, silvicultural, or recreational activity done or caused to be done by a person that significantly alters the physical characteristic of a critical dune area or a contour change done or caused to be done by a person."[7]

In this case, the permits did not pertain to any proposed use that was immediately adjacent to petitioners' property. The administrative-law judge (ALJ) addressed this

_____

[6] MCL 342.35301(g).

[7] MCL 324.35301(k). Before deciding on Dune Ridge's application for a permit, EGLE conducted public hearings on June 3, 2014, and June 30, 2014. Note that in contrast to MCL 324.35305(1), which allows the "*owner of the property immediately adjacent* to the proposed use" to request a formal hearing, a public hearing is provided "[u]pon the written request of *2 or more persons who own real property within 2 miles of the project*," MCL 324.35304(1)(c). The 2012 amendment of the Act likewise restricted a person's ability to request a public hearing. Before the 2012 amendment, MCL 324.35304(4)(c) required a public hearing "[u]pon the written request of 2 or more persons that own real property within the local unit of government or an adjacent local unit of government, or that reside within the local unit of government or an adjacent local unit of government . . . ." MCL 342.35304(4)(c), as enacted by 1995 PA 59.

3

question and summarized Dune Ridge's argument as "advancing a construction of § 35305(1) that only confers standing to adjoining property owners if the proposed use is on the border of parcels owned by the applicant." The ALJ rejected Dune Ridge's argument, concluding that

> [t]o accept this construction would impermissibly limit an adjoining property owner's right to a contested case. By its terms, § 35305(1) provides both the applicant and the owner of the immediately adjacent property the right to a contested case. In this case, Ms. Hoyt, Mr. Reininga Jr., Ms. Underwood, and Mr. Zolper are owners of the immediately adjacent property, and thus have standing to challenge the issuance of permits and/or special exception issued to Dune Ridge.[8]

The ALJ's reasoning runs contrary to the pertinent statutory language. MCL 324.35305(1) does not provide the owner of the immediately adjacent property the right to a contested case. The statute only provides the right to "request a formal hearing on the matter involved" to "the owner of the property immediately adjacent *to the proposed use*." Nothing in the Act remotely suggests that the proposed use extends to the entire parcel of property in which the use is sought. This conclusion is particularly unremarkable given that Dune Ridge applied for multiple permits for proposed uses on the same parcel of property. These permits all concerned proposed uses situated within the interior of its

---

[8] The Court of Appeals did not actually decide the statutory question squarely presented: whether "the property" is "immediately adjacent" to "the proposed use." *Lakeshore Group v Dep't of Environmental Quality*, unpublished per curiam opinion of the Court of Appeals, issued March 21, 2019 (Docket Nos. 340643 and 340647).

4

property and none of the proposed uses was "immediately adjacent" to petitioners' properties.[9]

The majority likewise dismisses Dune Ridge's view that petitioners "never had a statutory right to challenge EGLE's determination because 'proposed use' in MCL 324.35305(1) refers narrowly to only the specific section of the parcel of land being developed."[10]  The majority asserts without explanation that this "is not a reasonable reading of the statutory language."[11]  I disagree.  Not only is this understanding of MCL 324.35305(1) reasonable, but it is the only way that MCL 324.35305 can plainly be

---

[9] Any suggestion that Dune Ridge acted nefariously in proposing use only within the interior of its property is belied by EGLE's approval of the permits along with the city of Saugatuck's blessing.  Indeed, MCL 324.35304(1)(g) provides that

> a permit shall be approved *unless the local unit of government* or the department determines that the use will significantly damage the public interest on the privately owned land, or, if the land is publicly owned, the public interest in the publicly owned land, by significant and unreasonable depletion or degradation of any of the following:
>
> (*i*) The diversity of the critical dune areas within the local unit of government.
>
> (*ii*) The quality of the critical dune areas within the local unit of government.
>
> (*iii*) The functions of the critical dune areas within the local unit of government.

Here, petitioners clearly advocated that the proposed uses "will significantly damage the public interest on the privately owned land," but the city was simply not persuaded.

[10] *Ante* at 8 n 8 (emphasis omitted).

[11] *Ante* at 8 n 8.

5

understood and applied.  This is particularly so when considered in light of the legislative changes to this statute.[12]

MCL 324.35305(1) states in relevant part:

> If an applicant for a permit or a special exception or the owner of the property immediately adjacent to the proposed use is aggrieved by a decision of the department in regard to the issuance or denial of a permit or special exception under this part, the applicant or owner may request a [contested] hearing on the matter involved.

The statute does not define the words "immediately" or "adjacent," so we turn to a dictionary to shed light on their ordinary meanings.[13]  "Adjacent" can mean either "having a common endpoint or border" or "not distant[;] nearby."[14]  The Legislature took the guesswork out of picking the applicable definition here by modifying "adjacent" with the word "immediately," which is relevantly defined as "in direct connection or relation."[15]  Thus, the only fair reading of the statutory text is that eligibility for requesting a contested hearing is limited to owners of property having a common border in direct connection with the proposed use.

---

[12] "Unlike legislative history, statutory history—the narrative of the 'statutes repealed or amended by the statute under consideration'—properly 'form[s] part of the context of the statute[.]' "  See *People v Pinkney*, 501 Mich 259, 276 n 41; 912 NW2d 535 (2018), quoting Scalia & Garner, *Reading Law*: *The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 256.

[13] *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011) ("We may consult dictionary definitions to give words their common and ordinary meaning.").

[14] *Merriam-Webster's Collegiate Dictionary* (11th ed).

[15] *Id*.

MCL 324.35305(1) also refers to "the owner of the property," which clearly means a parcel of property. The statute, however, does not then refer to "the property" again, but rather, to "the proposed use." By using these distinct terms, the Legislature indicated that "the property" should not be substituted for "the proposed use" when this term is used later in the statute. Had the Legislature wanted "the proposed use" to be considered coextensive with "the property," it readily could have said so by, for example, referring to "the owner of the property immediately adjacent to the [property of the] proposed use." But the Legislature did not do so.

To interpret the term "the property" to have the same meaning as "the proposed use" violates the presumption against consistent usage. "A word or phrase is presumed to bear the same meaning throughout a text; a material variation in terms suggests a variation in meaning."[16] For example, if a document says "*land* in one place and *real estate* later, the second provision presumably includes improvements as well as raw land."[17] Clearly, this presumption applies to this text: the statute uses the term "the property" in one place and the term "the proposed use" later, so the second term refers to something different than the first. Yet, the majority treats them the same. In sum, I conclude that the Legislature clearly understood the meaning of "the property" and did not use that same meaning when it

---

[16] *Reading Law*, p 170.

[17] *Id*.

7

referred to "the proposed use" later in the statute.[18]  Petitioners have therefore failed to establish their right to request a formal hearing.

I also take exception to the majority's conclusion that "[i]f an eligible party requests a hearing, EGLE must hold one."[19]  MCL 324.35305(1) provides:

> If an applicant for a permit or a special exception or the owner of the property immediately adjacent to the proposed use is aggrieved by a decision of the department in regard to the issuance or denial of a permit or special exception under this part, the applicant or owner may request a formal hearing on the matter involved.  The hearing shall be conducted by the department as a contested case hearing in the manner provided for in the administrative procedures act of 1969, 1969 PA 306, MCL 24.201 to 24.328.

As noted in the majority opinion, "[t]he parties dispute whether 'shall' imposes an obligation on EGLE to hold a hearing or whether it merely mandates how a hearing would take place (i.e., in conformity with the Administrative Procedures Act)."[20]  Rather than resolving this dispute by parsing the words of the statute, the majority chooses to focus on what is not in the statute.  Specifically, the majority finds a gap in the statutory language in that "MCL 324.35305(1) includes no intermediary step between the request and the hearing."[21]  The majority therefore concludes that the absence of this "intermediary step" automatically entitles petitioner to a hearing.  The majority's construction plainly runs

---

[18] Indeed, the Legislature showed that it was capable of expressing a more relaxed proximity requirement in another section of Part 353.  See note 7 of this opinion.

[19] *Ante* at 10.

[20] *Ante* at 9.

[21] *Ante* at 9.

8

afoul of the "omitted-case canon" of statutory interpretation, which provides that "[n]othing is to be added to what the text states or reasonably implies (*casus omissus pro omisso habendus est*). That is, a matter not covered is to be treated as not covered."[22] Here, the majority improperly fills the gap between what is in the statute—that "the applicant or owner may request a formal hearing on the matter involved" and that "[t]he hearing shall be conducted by the department as a contested case hearing in the manner provided for in the administrative procedures act"—by inappropriately inserting "[i]f an eligible party requests a hearing, EGLE must hold one." Further, the majority's gap-filler is not even reasonably implied by the statute. Common sense and experience caution that requests are not always granted. The above statute simply cannot be read as providing petitioners a right to a contested hearing merely upon their request for a formal hearing.

In addition, the Legislature has made very clear in other statutes concerning administrative proceedings when a request for a contested hearing is not within an agency's discretion to grant, and it did not do so here. For instance, under the Social Welfare Act,[23] "the provider upon request shall be *entitled* to an immediate hearing held in conformity with chapter 4 and chapter 6 of the administrative procedures act of 1969 . . . ."[24] Under the Public Health Code,[25] "[a]n applicant, licensee, or other person whose legal rights,

---

[22] *Reading Law*, p 93.

[23] MCL 400.1 *et seq*.

[24] MCL 400.111a(8) (emphasis added).

[25] MCL 333.1101 *et seq*.

9

duties, or privileges are required by this code to be determined by the department, after an opportunity for a hearing, *has the right* to a contested case hearing in the matter, which shall be conducted pursuant to the administrative procedures act of 1969."[26] The Mental Health Code[27] provides that "[a]n administrative hearing shall be held and the department . . . shall make a redetermination of ability to pay."[28]

That said, "[t]he omitted-case canon . . . must sometimes be reconciled with the principle that a text does include not only what is express but also what is implicit. For example, when a text authorizes a certain act, it implicitly authorizes whatever is the necessary predicate of that act."[29] For example, "[a]uthorization to harvest wheat genuinely implies authority to enter the land for that purpose."[30] But a "request" need not necessarily be granted; in fact, the very nature of a request is that the outcome is uncertain, so the required, genuine implication from the text cannot be that the request will be granted absent language, which is not present here, to remove the discretion inherent in the act of considering a request.

Moreover, by removing discretion from EGLE to grant a formal hearing, the majority simultaneously creates a problematic statutory regime that, in its words, "provides

---

[26] MCL 333.1205(1) (emphasis added).

[27] MCL 330.1001 *et seq*.

[28] MCL 330.1834(b).

[29] *Reading Law*, p 96.

[30] *Id*. at 96-97.

10

no off-ramp"[31] or procedure by which the permit applicant can avoid a formal hearing after it has been requested by the owner of immediately adjacent property. Simply because the statute does not expressly provide for, in the majority's terminology, "forced forfeiture,"[32] does not mean that the agency is precluded from exercising its implicit discretion to grant, and by necessary extension, to deny petitioner a contested hearing. Otherwise, EGLE is without discretion to refuse a request for a contested hearing by a petitioner who has since sold the parcel of the property that actually was immediately adjacent to the proposed use. An interpretation of a statute, such as the majority's in this case, that would permit a sham contested hearing should be viewed with great skepticism.

For the above-stated reasons, I would deny the application for leave to appeal and order that the case be dismissed with prejudice.

Brian K. Zahra

---

[31] *Ante* at 10.

[32] *Ante* at 10.

11

# STATE OF MICHIGAN

## SUPREME COURT

LAKESHORE GROUP, CHARLES
ZOLPER, JANE UNDERWOOD, LUCIE
HOYT, and WILLIAM REININGA,

        Petitioners-Appellants,

and

KENNETH ALTMAN, DAWN
SCHUMANN, GEORGE SCHUMANN,
MARJORIE SCHUHAM, and
LAKESHORE CAMPING,

        Intervenors-Appellants,

v                                Nos. 159524-5

DEPARTMENT OF ENVIRONMENTAL
QUALITY and DUNE RIDGE SA LP,

        Respondents-Appellees.

---

VIVIANO, J. (*dissenting*).

I join Justice Zahra's dissent to the extent it would hold that petitioners failed to establish that they have the right to request a formal hearing under MCL 324.35305(1) because their property does not have a common border in direct connection with the proposed use. I do not join in the dissent's second point—i.e., that the Department of Environment, Great Lakes, and Energy otherwise has discretion to grant or deny a

contested hearing to an aggrieved party—because it is unnecessary for us to reach that issue.

David F. Viviano


WELCH, J. did not participate in the disposition of this case because the Court considered it before she assumed office.